**MORTON BUILDINGS, INC., Respondent,**

v.

**COMMISSIONER OF REVENUE, Relator.**

No. C7–92–82.

Supreme Court of Minnesota.

Aug. 7, 1992.

Rehearing Denied Sept. 21, 1992.

Hubert H. Humphrey, III, Atty. Gen., Gregory P. Huwe, Asst. Atty. Gen., Tax Litigation Div., St. Paul, for relator.

John W. Windhorst, Jr., Dorsey & Whitney, Minneapolis, for respondent.

GARDEBRING, Justice.

This case arises from the Commissioner of Revenue's (commissioner) appeal of a Minnesota Tax Court Order granting a use tax refund to Morton Buildings, Inc. (Morton). In 1988, Morton initially applied for a refund of the use taxes paid from April 1985 through December 1987 (the tax periods). The commissioner granted Morton's application in part but denied a refund for use taxes paid on raw materials it purchased out of state, manufactured into building components, and brought to Minnesota to construct pre-fabricated buildings. On appeal, the tax court granted the refund, finding that the raw materials purchased by Morton outside Minnesota

are "us[ed], stor[ed] and consum[ed]" outside of Minnesota in the making of new and different items of tangible personal property, hardware and building components; are not "purchased" within the meaning of the statute; and are not purchased "for use, storage or consumption" in Minnesota. The tax court therefore concluded that the raw materials do not satisfy the required conditions for the imposition of the use tax under Minn.Stat. § 297A.14.

The facts, as stipulated by the parties, are as follows: Morton Buildings, Inc. is an Illinois corporation with its principal place of business in Morton, Illinois, and seven sales offices in Minnesota. Morton sells and erects prefabricated buildings for industry and farm use in Minnesota and other states. Morton purchases the raw materials it uses outside Minnesota, stores them outside Minnesota and makes them into building components at factories located outside Minnesota. The raw materials are not purchased for any particular project. When a customer orders a building, Morton withdraws the necessary raw materials from storage and makes them into the building components needed for that building, according to the specific design specifications chosen by the customer. These include the type and location of windows, doors, overhangs, skylights, etc. About 16.6% of the raw materials Morton uses in its buildings do not have any work done on them at the factories; they are purchased in their final form outside Minnesota. These materials include some of the lumber and nails, cement, staples, insulation bats and plastic sheeting.[1]

The building components Morton makes at the factories include trusses, lower columns, upper columns, purlins, wind ties and overhang rafters. Making these components involves sawing the lumber to certain lengths and at different angles, drilling holes if needed, and assembling the wooden pieces using metal gussets, connector plates or nails. At the factories, Morton also makes the metal panels which make up the building's interior and exterior walls and roof panels. The panels are made from coils of galvanized cold-rolled steel which is coated prior to its arrival at the factory. The steel is run through a machine to roll channels into it to strengthen it and then cut to the proper size. Morton's building components must be within approximately one-eighth to one-half inch of being "square" in order to properly fit together into the finished building.

Once all the factory work is complete, Morton transports all the necessary building components to the building site. Morton employs a three-person crew to erect the building, using the components made at Morton factories and some materials Morton buys completely finished. Morton subcontracts to independent contractors any plumbing, heating, electrical or finish carpentry work the customer orders. The erection of the building constitutes an improvement to real property for sales and use tax purposes.

Morton's refund claim has two parts. First, it seeks a refund of all of the use taxes it paid to Minnesota for the cost of the raw materials it used at its factories to make building components used in Minnesota, an amount of $586,749.87. Second, it seeks a refund of a portion of the taxes covered by the first claim to reflect taxes it had paid to Iowa on the purchase of the same materials, an amount of $223,749.14. The commissioner allowed the second claim, and ordered a refund of that tax plus interest, pursuant to Minn.Stat. § 297A.24 (1990), which allows credits for use taxes paid to other states on the same tangible personal property. Of the remaining $363,-000.73 of the first claim, an amount representing approximately 16.6% was deducted, to represent the proportion of the building components Morton purchased in a completely finished form and for which it seeks no refund of the use tax. Morton's refund claim is therefore $302,697.60.

This court's review of tax court decisions is governed by the provisions of Minn.Stat. § 271.10, subd. 1 (1990), which limits review to cases where it is argued that the tax court was without jurisdiction,

---

1. Morton is not seeking a refund for the use taxes paid on these items.

the decision was not justified by the evidence or in conformity with law, or the tax court committed an error of law. In reviewing questions of fact this court's review is limited "to determining whether there is reasonable evidence to sustain the findings." *Red Owl Stores, Inc. v. Comm'r of Taxation*, 264 Minn. 1, 9–10, 117 N.W.2d 401, 407 (1962). In reviewing questions of law this court has plenary power. *Nagaraja v. Comm'r of Revenue*, 352 N.W.2d 373, 376 (Minn.1984). The application of the law to the stipulated facts is a question of law, and thus is freely reviewable.

■ During the 1930's, many states began imposing sales taxes on items sold within their borders. To counteract the tendency of consumers to shop in states with low or no sales taxes, complementary use taxes were introduced. Warren & Schlesinger, *Sales and Use Taxes: Interstate Commerce Pays Its Way*, 38 Colum.L.Rev. 49, 63–65 (1938). The goal of use taxes is to place in-state and out-of-state sellers on the same footing. If a consumer buys a product out-of-state where there is no sales tax, the use tax is imposed when the item is brought into the state for use. To prevent taxation by multiple states in interstate transactions, the sales and use tax statutes often allow a credit for taxes paid to other states on the same items. Annotation, *Validity and Construction of Provisions Allowing Use Tax Credit for Tax Paid in Other State*, 31 A.L.R. 4th 1206, 1208 (1984).

Minnesota first enacted its sales and use tax statutes in 1967. Act of June 1, 1967, ch. 32, Art. XIII, §§ 2 & 14, 1967 Minn. Laws 2143, 2179, 2182, codified at Minn. Stat. § 297A.02 and Minn.Stat. § 297A.14. "[T]his use tax protects the State's sales tax by eliminating the residents' incentive to travel to States with lower sales taxes to buy goods rather than buying them in Minnesota." *Minneapolis Star & Tribune*

*Co. v. Minnesota Comm'r of Revenue*, 460 U.S. 575, 577, 103 S.Ct. 1365, 1367–68, 75 L.Ed.2d 295 (1983).

The Minnesota use tax is imposed "for the privilege of using, storing or consuming in Minnesota tangible personal property or taxable services purchased for use, storage, or consumption in this state" unless the sales tax was paid on the sales price. Minn.Stat. § 297A.14 (1990). Thus, the tax court found that to uphold the imposition of the use tax on the tangible personal property Morton used in Minnesota to construct pre-fabricated buildings, three elements must be met:

(a) the item of tangible personal property must be used, stored or consumed in Minnesota;

(b) the item of personal property must be purchased; and

(c) the purchase of the item of personal property must have been for use, storage or consumption in Minnesota.

Morton argues, and the tax court found, that the items of tangible personal property Morton used, stored or consumed in Minnesota were not the raw materials they purchased, but the building components and hardware made out of the raw materials, which are "new and different items of tangible personal property." Thus, the raw materials on which the use tax was imposed were not used, stored or consumed in Minnesota, but were used, stored and consumed in Morton's building component factories outside Minnesota.

The tax court also concluded that what was used, stored, or consumed in Minnesota, the building components, were not purchased, because they were manufactured; and therefore they were not purchased for use, storage, or consumption in Minnesota. Thus, the tax court concluded, a tax on the raw materials is not justified because no part of the three-prong test is met.[2]

---

**2.** During the 1992 session, apparently in response to the tax court's decision, the legislature amended Minn.Stat. 297A.14, subd. 1, seemingly to ensure that Morton must pay the use tax on the raw materials it purchases and manufac-

tures into building components used in Minnesota. The new language is:

A use tax is imposed on every person who uses, stores, or consumes tangible personal property in Minnesota which has been manufactured, fabricated, or assembled by the per-

We reverse the tax court because we believe that its underlying premise is wrong. The tax court decision, and that of the other jurisdictions in which Morton has prevailed,[3] is bottomed on the notion that the processing of the raw materials in other locations somehow precludes their later use in the construction of buildings in Minnesota. We conclude that this is contrary to the applicable statutory definitions and the common usage of the word "use."

■ The legislature has broadly defined "use" for the purposes of the use and sales tax statutes: " 'Use' includes the exercise of any right or power over tangible personal property * * *." Minn.Stat. § 297A.01, subd. 6 (1990). The definition of "tangible personal property" is:

> "Tangible personal property" means corporeal personal property of any kind whatsoever, including property which is to become real property as a result of incorporation, attachment, or installation following its acquisition.

Minn.Stat. § 297A.01, subd. 11 (1990). In our opinion, Morton's manufacturing process does not transform the raw materials into something which is not used in Minnesota. Despite their alteration at the factories, the raw materials are still tangible personal property used in Minnesota as parts of Morton's prefabricated buildings. The raw materials, in their altered form as building components, are used in Minnesota when they are erected into prefabricated buildings. Morton clearly exercises a right or power over the raw materials when it constructs the prefabricated building, and thus Morton "uses" the materials in Minnesota.

This court never has required that raw materials be unaltered when used in Minnesota in order to trigger liability for the use tax. Our reluctance to narrow the definitions of "use" and "tangible personal property" is consistent with the general goal of the sales and use tax statutes, namely, to establish a complementary scheme whereby everything is presumed taxable unless specifically exempted. See Minn.Stat. § 297A. Our decision is also consistent with other states' decisions regarding the taxability of raw materials that are altered in some fashion before entering a state. See Exxon Corp. v. Wyoming State Bd. of Equalization, 783 P.2d 685, 688 (Wyo. 1989), cert. denied, 495 U.S. 910, 110 S.Ct. 1937, 109 L.Ed.2d 300 (1990) ("The activities in Colorado were merely processes necessary to prepare the pipe for the use intended * * *."); Chicago Bridge & Iron Co. v. Johnson, 19 Cal.2d 162, 119 P.2d 945, 948 (1941); and Western Contracting Corp. v. State Bd. of Equalization, 265 Cal.App.2d 568, 569–71, 71 Cal.Rptr. 472, 473–76 (1968). Because the raw materials are used in Minnesota, the first element of the statutory test is met.

We conclude that the other two elements of the test are met as well. Having determined that the alteration which takes place in Morton's factories does not preclude the materials from being used, stored or consumed in Minnesota, it is easy to find that the second test, that they have been purchased, is met as well. The raw materials were admittedly purchased outside of Minnesota, and the only remaining issue is the application of the third prong of the

---

son from materials, either within or without this state, at the rate of tax imposed under section 297A.02 on the sales price of sales at retail of the materials contained in the tangible personal property, unless the tax imposed by section 297A.02 was paid on the sales price.
Omnibus Tax Bill of April 15, 1992, ch. 511, art. 8, § 11, 1992 Minn.Laws 650, 788.

**3.** Morton has raised this same issue in other states, under similar statutes, and has prevailed in some jurisdictions and lost in others. See Morton Buildings, Inc. v. Bannon, 607 A.2d 424 (Conn.1992); Morton Buildings, Inc. v. Wiscon-

sin Dept. of Revenue, No. 89–S–438 (Wisc. Tax Appeals Comm., July 26, 1991), aff'd, No. 91–CV–3124 (Wisc. Circuit Ct., Feb. 10, 1992); Morton Buildings, Inc. v. Director of Revenue, No. 88–001879RZ (Mo.Admin.Hearing Commn., Dec. 8, 1989); Morton Buildings, Inc. v. Chu, 126 A.D.2d 828, 510 N.Y.S.2d 320 (N.Y.App.Div. 1987), aff'd, 70 N.Y.2d 725, 519 N.Y.S.2d 643, 513 N.E.2d 1304 (1987). But cf. In re Morton Buildings, Inc., No. 26,653 (Order of the Comptroller of Public Accounts of the State of Texas, July 26, 1991); In re Morton Buildings, Inc., No. A–88–150, (Wyo.State Bd. of Equalization, Apr. 4, 1990) (1990 WL 260456).

test, that they be purchased *"for* use, storage or consumption in [Minnesota]".

■■ While Morton makes its strongest argument on this part of the test, we nevertheless determine that the raw materials are purchased *for* use, storage or consumption in the state. Minn.Stat. § 297A.23 (1990) places the burden of proof on this issue squarely on the taxpayer. The stipulated facts in this matter indicate that in the decade prior to the period covered by this litigation, approximately one-third of Morton's gross sales were in Minnesota (varying on an annual basis from 28% to 38%). Further, Morton operated seven sales offices in the state. On these facts, it is not necessary that Morton knew precisely which two-by-four or bracket would be used in Minnesota; a proportion of all the raw materials it purchased were to be used in Minnesota, and were in fact used in Minnesota. It is only that portion which the state proposes to tax. Morton has not sustained its burden of proof on this issue.

This analysis is consistent with that of the California Supreme Court in the *Chicago Bridge & Iron* when it stated:

> In regard to the portion of materials purchased by plaintiff and retained as stock in its plants outside this state to be used in the construction of tanks as its business might require, it is clear that in order that the object and purpose of the Use Tax Act may not be frustrated, it must be concluded that they were subject to the use tax. Those materials were purchased for use, storage or other consumption in this state. While it is true that they were not acquired with the express purpose of performing any specified contract or order, plaintiff was engaged in the business of selling and constructing tanks in California. In the course of its business those materials might be used in California or elsewhere. It cannot be said therefore that they were not purchased for use here. They were purchased for use in California if and when the business required their use here to fill an order. The requirement arose and they were used in this state.

It follows that those particular materials were purchased for use in California. The materials being used here following the intent to use them here upon a certain contingency, it objectively follows that they were acquired for use here.

119 P.2d at 948.

Furthermore, the California court has also addressed a statutory presumption similar to that of Minn.Stat. 279A.23. It has said:

> [T]he presumption is not overcome by a showing that the purchaser had no intention to use that specific property in California, where it is otherwise shown by reason of the nature of the purchaser's business that the property might be used in California. [citations omitted]. Were the rule otherwise a company that operates in many states could avoid the payment of use tax in any state by demonstrating that it had not decided in which state to use the purchased products at the time of the purchase.

*Western Contracting Corp.*, 71 Cal.Rptr. at 477.

Our review of the statutes' structure and definitions, the applicable case law, and the facts of this case indicate that the raw materials Morton purchases to manufacture building components used in Minnesota are items of tangible personal property, are purchased for use in Minnesota, and are used in Minnesota. The three necessary elements for imposition of the use tax are met, and Morton is not entitled to the use tax refund it seeks.

Reversed.