**MINNESOTA TWINS PARTNERSHIP,**
Relator,

v.

**COMMISSIONER OF REVENUE,**
Respondent.

No. C6–98–409.

Supreme Court of Minnesota.

Dec. 31, 1998.

Norman P. Bjornnes, Jr., Catherine R. Thatcher, Minneapolis, for Relator.

Hubert H. Humphrey III, Attorney General, Thomas K. Overton, Assistant Attorney General, St. Paul, for respondent.

## OPINION

GILBERT, Justice.

This case involves determining whether the Minnesota Twins Partnership's (Twins) purchases of ticket stock and novelty items were purchases for resale. The Twins argue that the baseball club resells those items to baseball game attendees and thus the purchases of the items are exempt from sales or use tax. The Minnesota Tax Court found that the items were given away rather than resold to the attendees. The tax court therefore held that the Twins' purchases of the items were not purchases for resale and that the Twins were responsible for the tax on the items. We affirm.

This case is presented on the following stipulated facts. During the 1992 through 1994 fiscal years, the Twins, a professional baseball club, purchased cardboard admission tickets ("ticket stock") and novelty items, such as baseball bats, duffel bags, and sunglasses, for distribution to home game attendees. Ticket stock was distributed to all home game attendees, and attendees were required to present the ticket stock to be admitted into home games and to receive novelty items. Game attendees were allowed to keep the stub portion of the ticket stock after admission to the game.

Novelty items were distributed at select home games. At some home games the novelty items were distributed to all game attendees, while at other home games the novelty items were distributed only to select attendees. The ticket stock did not list a separate purchase price for the novelty items, and the admission prices did not vary among games at which novelty items were provided and those at which no novelty items were distributed.

The Twins advertised one novelty item as being given away "free" to those attending the game, and the Twins deducted both the novelty items and the ticket stock as expenses on its federal and Minnesota income tax returns. Other businesses sometimes paid money to the Twins in order to co-sponsor distribution of novelty items. The Twins accounted for money received from co-sponsors as income from advertising revenue. The cost of the novelty items was charged to the "Sales and Marketing Expenses—Game Day" account, rather than the "inventory" account that the Twins use for items sold individually at retail, such as souvenirs.

Pursuant to Minn.Stat. § 297A.14 (1996), the Twins paid use tax on all ticket stock and novelty items.[1] The Twins then filed for a refund of that tax, which totaled $31,136.58: $28.912.51 state use tax and $2,224.07 Minneapolis city use tax.[2] Of the total amount for which the Twins seek a refund, $146 is attributable to the purchase of ticket stock. The Twins based its refund request on the assertion that its purchases of novelty items and ticket stock were purchases for resale.

The Commissioner of Revenue denied the Twins' refund request. The Twins then appealed to the Appeals, Legal Services and Criminal Investigation Division of the Department of Revenue, which also denied the refund. The Twins then appealed to the tax court.[3]

 The tax court held that the Twins did not resell the ticket stock and novelty items to game attendees, but instead gave the items away. The tax court based this hold-

---

1. The granting of the privilege of admission to athletic events is subject to sales tax. Minn.Stat. § 297A.01, subd. 3(d). The Twins paid and do not dispute its responsibility for this tax.

2. The parties stipulated that the Twins paid a use tax rather than a sales tax.

3. In 1997, while the appeal to the tax court was pending, the legislature amended Minn.Stat. § 297A.01. As amended, Minn.Stat. § 297A.01, subd. 4(h), states that "[t]angible personal property that is awarded as prizes shall not be considered property purchased for resale." The amendments further added Minn.Stat.

§ 297A.01, subd. 4(i), which states, "[t]angible personal property that is utilized or employed in the furnishing or providing of services under [the subsection addressing admission to athletic events], * * * including property given as promotional items, shall not be considered property purchased for resale." Subdivision 4(i) applies to all purchases made after December 31, 1992. On appeal, the Twins challenge the constitutionality of the retroactive application of subdivision 4(i). However, because we agree with the tax court's conclusion that these amendments do not alter the outcome of this case, we decline to address this issue.

ing on the fact that game attendees paid no consideration for the items. We review the tax court's conclusions of law *de novo*. *See F–D Oil Co. v. Commissioner of Revenue*, 560 N.W.2d 701, 704 (Minn.1997).

Minnesota Statute section 297A.14, subd. 1 imposes a use tax "[f]or the privilege of using, storing, distributing, or consuming in Minnesota tangible personal property * * * purchased for use, storage, distribution, or consumption in this state." "Use" includes "the exercise of any right or power over tangible personal property * * * except that it does not include the sale of that property in the regular course of business." Minn. Stat. § 297A.01, subd. 6; *see also Questar Data Systems, Inc. v. Commissioner of Revenue*, 549 N.W.2d 925, 928 (Minn.1996). The use tax is imposed "on the sales price of sales at retail of the items unless the [sales] tax imposed by section 297A.02 was paid on the sales price." Minn.Stat. § 297A.14, subd. 1. A "sale at retail" is defined as "a sale for any purpose other than resale in the regular course of business." Minn.Stat. § 297A.01, subd. 4(a). The Twins seek a refund of the use tax that it paid on its purchases of novelty items and ticket stock, asserting that the purchases fall within the "resale in the regular course of business" exemption from sales and use tax.

█ The burden of proving that a sale is not a sale at retail and is thus exempt from the tax lies with the party seeking the exemption. Minn.Stat. § 297A.09 (1996); *Weigel v. Commissioner of Revenue*, 566 N.W.2d 79, 80 (Minn.1997). Tax assessments by the commissioner "are presumed to be valid and correctly determined" and the burden of showing that the assessment is invalid lies with the taxpayer. *F–D Oil Co.*, 560 N.W.2d at 704; *see also* Minn.Stat. § 270.68, subd. 3 (1996).

Implicit in the Twins' assertion that the novelty items and ticket stock were purchased for resale to game attendees in the regular course of business is the assertion that the novelty items and ticket stock were *resold* to attendees. A sale is defined as

"[a]ny transfer of title or possession, or both, of tangible personal property, whether absolutely or conditionally * * * for a *consideration* in money or by exchange or barter." Minn.Stat. § 297A.01, subd. 3(a) (emphasis added).

█ The Twins' assertion that there was a resale of the novelty items and ticket stock falls short of the mark for two reasons. First, supplies purchased and used for the "sole purpose of providing * * * services" are ultimately used by the service provider, and thus it is the service provider who is responsible for sales or use tax on the items. *Weigel*, 566 N.W.2d at 80, 83. Second, absent consideration, a transfer of property by a business to a consumer is not a sale, but is instead a gift of goodwill. *See Midwest Fed. Sav. & Loan Ass'n v. Commissioner of Revenue*, 259 N.W.2d 596, 599 (Minn.1977). "Generally a person purchasing property to give away in any manner is the user or consumer thereof and is liable for the sales tax thereon." Minn. R. 8130.5100, subp. 1 (1997).

█ In this case, the ticket stock served as mere indicia establishing that the holder was entitled to admission to the baseball games. The Twins provided the ticket stock to game attendees for the convenience of both the Twins and attendees. *See Wisconsin Dep't of Revenue v. Milwaukee Brewers Baseball Club*, 111 Wis.2d 571, 331 N.W.2d 383, 388 (Wis.1983).[4] Attendees did not pay to receive the small cardboard ticket; rather, the attendees paid for the right to be admitted to the game, a right that was evidenced by the ticket stock. Because attendees paid for the right to be admitted to the game, and not for the ticket stock itself, the Twins received no consideration for the ticket stock. Absent consideration, the transfer of the ticket stock to game attendees was not a sale, and thus the Twins' purchase of the ticket stock was not a purchase for resale.

█ Similarly, game attendees did not pay consideration to receive the novelty items.

4. The Wisconsin statutory framework differs from the Minnesota Statutes. *See* Wis. Stat.

§ 77.52, subd. (2)(a)(2) (1997).

*See id.* At many games, not all attendees received a novelty item, and those who did receive novelty items paid no more consideration for admission to the game than those who did not receive the novelty items. We conclude that the subsequent transfer of these novelty items to game attendees was not a resale. The game attendees made no payment for these items. Instead, the novelty items were free tokens of goodwill, not unlike the promotional gifts or premiums in *Midwest Fed. Sav. & Loan Ass'n,* 259 N.W.2d at 599. They were distributed to game attendees as part of the service of admission to the baseball games. In fact, the Twins charged the cost of the novelty items to the "Sales and Marketing Expenses— Game Day" account on its internal accounting, rather than the "inventory" account the Twins use for other items sold individually at retail, such as souvenirs. Thus, the Twins' own accounting of the novelty items is consistent with our interpretation of the intended use of the items.

The Twins, as a service provider, transferred the ticket stock and novelty items to game attendees as part of the overall service provided. The Twins have thus failed to prove that the novelty items and ticket stock were exempt from use tax under Minn.Stat. § 297A.14, subd. 1. Therefore the Twins are liable for the tax on its purchase of the items. Accordingly we affirm the decision of the tax court.

Affirmed.