**A&H VENDING COMPANY,
et al., Respondents,**

v.

**COMMISSIONER OF REVENUE,
Relator.**

No. C0–99–1596.

Supreme Court of Minnesota.

April 6, 2000.

Michael Hatch, Atty. Gen., Thomas K. Overton, Asst. Atty. Gen., St. Paul, for relator.

Todd I. Freeman, John A. Cotter, Mark D. Christopherson, Larkin, Hoffman, Daly & Lindgren, Ltd., Bloomington, for respondent.

## OPINION

LANCASTER, Justice.

Respondent taxpayers are in the business of operating various video games, pinball machines, juke boxes and similar amusement devices at business establishments such as video arcades, restaurants and pool halls. Respondents, 17 separate businesses, sought refunds of sales tax paid on their purchases of amusement devices used in their businesses. The tax court, relying on its previous decision in *Minntertainment Co. v. Commissioner of Revenue,* No. 6659, 1997 WL 45346 (Minn. T.C. Feb. 3, 1997), granted summary judgment in favor of respondents. The Commissioner of Revenue seeks reversal of the summary judgment order, arguing that the tax court has misinterpreted the purchase for resale provisions of Minn.Stat. § 297A.01, subd. 4 (1998). The Commissioner maintains that respondents do not resell the amusement devices as the tax court found, but instead use the amusement devices to provide the service of entertainment. We agree with the Commissioner and reverse the tax court.

Between March 1990 and November 1997, respondents purchased amusement devices and equipment replacement parts and paid sales tax on these purchases.[1] Respondents also paid sales tax on the revenues generated by collecting coins deposited in the amusement devices and selling tokens used to operate the amusement devices.

Following the tax court's decision in *Minntertainment,* each of the respondents filed a timely request for a refund of sales

---

1. Respondents only seek refunds dating back to 1992.

tax paid on the initial purchase of the amusement devices, as well as sales tax paid on the purchase of repair and upkeep material. Respondents contended that because the amusement devices were purchased for the purpose of selling the use of the devices to customers, the purchases of the amusement devices were for the tax-exempt purpose of resale under Minn.Stat. § 297A.01, subd. 4. In notices dated February 6, 1998,[2] the Commissioner denied respondents' requests for refunds on the ground that the purchases of the amusement devices were "sales at retail" as defined in Minn.Stat. § 297A.01, subd. 4, and therefore an excise tax was due under Minn.Stat. § 297A.02, subd. 1 (1998).

Respondents jointly appealed to the tax court and filed a motion for summary judgment. The Commissioner opposed the motion and filed a separate motion for summary judgment arguing that the 1997 Amendment[3] to section 297A.01, subd. 4,[4] explicitly rejected the notion that the purchase of amusement devices was for a "resale" purpose. The Commissioner also filed an affidavit stating that the claimed refunds had not been audited for accuracy. The tax court granted summary judgment to the respondents and awarded sales tax refunds totaling $1,086,226.80. *See A & H Vending Co. v. Commissioner of Revenue*, No. 7051, 1999 WL 549636 (Minn. T.C. July 23, 1999).

The tax court held that the legislature's 1997 Amendment to Minn.Stat. § 297A.01, subd. 4(i), did not apply to the taxation of the purchase of amusement devices. The

tax court also held, relying on its decision in *Minntertainment*, that respondents' purchases of amusement devices fell within the "purchased for resale" exclusion to sales tax. The Commissioner then sought review by this court.

In *Minntertainment*, the tax court was faced with a request for refunds of sales tax paid on initial purchases of amusement devices used by the Minntertainment company in operating Camp Snoopy at the Mall of America. In *Minntertainment*, the tax court observed that the granting of the privilege of having access to and use of amusement devices is a "sale" subject to tax under Minn.Stat. § 297A.01, subd. 3, and reasoned that the initial purchase of the devices must therefore be a "purchase for resale." 1997 WL 45346 at *2. The tax court rejected the Commissioner's argument that Minntertainment used the devices to provide the service of entertainment, and concluded instead that "customers are entertained and amused when they use the equipment." *Id.* We never reviewed the decision because the parties withdrew the appeal after the legislature passed the 1997 Amendment.

■■■ We review a grant of summary judgment to determine whether there are any genuine issues of material fact and whether the granting court erred in its application of the law. *See Hedglin v. City of Willmar*, 582 N.W.2d 897, 901 (Minn. 1998). Decisions of the tax court are not binding on this court. *See Weigel v. Commissioner of Revenue*, 566 N.W.2d 79, 83 n. 4 (Minn.1997). We review questions of

2. The Commissioner denied the refund request of respondent Kerrs Co. Inc. (Twin Ports Arrowhead Amusement) on January 23, 1998. The sixteen other respondents' refund requests were denied in separate orders that were released together on February 6, 1998.

3. Act of June 2, 1997, ch. 231, art. 7, §§ 5, 42, 1997 Minn. Laws 2395, 2529, 2546 (hereinafter 1997 Amendment).

4. Minn.Stat. § 297A.01, subd. 4(i) (1998), was added to subdivision 4, and provides:
 Tangible personal property that is utilized or employed in the furnishing or providing

of services under section 297A.01, subdivision 3, paragraph (d), or in conducting lawful gambling under chapter 349 or the state lottery under chapter 349A, including property given as promotional items, shall not be considered property purchased for resale. *Machines, equipment, or devices that are used to furnish, provide, or dispense goods or services, including coin-operated devices, shall not be considered property purchased for resale.*
(Emphasis added.)

law, such as the interpretation of a statute by the tax court, de novo. *See Minnesota Twins Partnership v. Commissioner of Revenue,* 587 N.W.2d 287, 289 (Minn.1998).

 Respondents first argue that the doctrine of collateral estoppel precludes the Commissioner from relitigating the tax court's holding in *Minntertainment.* We have held that for collateral estoppel to apply, "each of the following elements must be satisfied":

(1) [t]he issue was identical to one in a prior adjudication; (2) there was a final judgment on the merits; (3) the estopped party was a party or in privity with a party to the prior adjudication; and (4) the estopped party was given a full and fair opportunity to be heard on the adjudicated issue.

*Care Institute, Incorporated–Maplewood v. County of Ramsey,* 576 N.W.2d 734, 737 (Minn.1998) (quoting *Tarutis v. Commissioner of Revenue,* 393 N.W.2d 667, 669 (Minn.1986)). In *Tarutis,* we said:

Collateral estoppel in income tax cases "must be confined to situations where the matter raised in the second suit is identical in all respects with that decided in the first proceeding and where the controlling facts and applicable legal principles remain unchanged."

393 N.W.2d at 669 (quoting *Commissioner of Internal Revenue v. Sunnen,* 333 U.S. 591, 599–600, 68 S.Ct. 715, 92 L.Ed. 898 (1948)). *Tarutis* was an income tax case, but we saw no reason to treat property tax cases differently in *Care Institute,* nor do we see a reason to treat this sales tax case differently. *See Care Institute,* 576 N.W.2d at 737.

 We declined to apply collateral estoppel against Ramsey County in *Care Institute* where Care Institute, Inc. was not a party to the prior litigation and the

issues were not identical. *See* 576 N.W.2d at 737. Our opinion in *Care Institute* is consistent with the United States Supreme Court decision in *United States v. Mendoza,* 464 U.S. 154, 162–63, 104 S.Ct. 568, 78 L.Ed.2d 379 (1984), where the Court held that non-mutual offensive[5] collateral estoppel does not apply against the government. While we decline to adopt a blanket rule that there must always be mutuality of parties before collateral estoppel can apply against the government, respondents' argument nevertheless falls short of the mark. Here, none of the respondents were a party to *Minntertainment,* and we reject respondents' collateral estoppel argument.

 We turn next to an analysis of the statute governing sales tax. This is a question of law that we review de novo. *See Hedglin,* 582 N.W.2d at 901. "When we interpret statutes, we must ascertain and effectuate the intention of the legislature." *Id. See also* Minn.Stat. § 645.16 (1998). "If the words of the statute are free from ambiguity, we will not disregard them. Therefore, any statutory construction must begin with the language of the statute." *Hedglin,* 582 N.W.2d at 901.

 The presumption in Minnesota is that all sales and purchases are taxable. Minnesota Statutes § 297A.09 (1998), provides:

For the purpose of the proper administration of this chapter and to prevent evasion of the tax, *it shall be presumed that all gross receipts are subject to the tax until the contrary is established. The burden of proving that a sale is not a sale at retail is upon the person who makes the sale,* but that person may take from the purchaser, at the time the exempt purchase occurs, an exemption

---

**5.** Non-mutual offensive collateral estoppel occurs when a different plaintiff seeks to preclude a defendant from relitigating an issue that the defendant had previously litigated and lost in a prior action. *See Mendoza,* 464 U.S. at 159 n. 4, 104 S.Ct. 568, 78 L.Ed.2d

379; *cf. United States v. Stauffer Chem. Co.,* 464 U.S. 165, 174, 104 S.Ct. 575, 78 L.Ed.2d 388 (1984) (holding that mutual (identical party) defensive collateral estoppel may be asserted against the government).

certificate to the effect that the property purchased is for resale or that the sale is otherwise exempt from the application of the tax imposed by sections 297A.01 to 297A.44. A person asserting a claim that certain sales are exempt, who does not have the required exemption certificates in their possession, shall acquire the certificates within 60 days after receiving written notice from the commissioner that the certificates are required. If the certificates are not obtained within the 60–day period, the sales are deemed taxable sales under this chapter.

(Emphasis added.) The general goal of sales and use taxes is to establish a complementary scheme whereby every sale is presumed taxable unless specifically exempted. *See Morton Buildings v. Commissioner of Revenue,* 488 N.W.2d 254, 258 (Minn.1992). The burden of proving an exemption from taxation rests with the party seeking the exemption. *Weigel,* 566 N.W.2d at 80–81.

■ Respondents and the Commissioner agree that sales tax is properly imposed on the revenue generated from sales of game-operating tokens and from the coins deposited into the amusement devices. They strongly disagree on whether the purchase of an amusement device for the purpose of generating income is subject to sales tax or is exempted by the purchase for resale provision of chapter 297A. That provision, contained in section 297A.01, subd. 4, provides: "(a) A 'retail sale' or 'sale at retail' means a sale for any purpose *other than resale in the regular course of business.*" (Emphasis added.) A purchase intended for resale in the regular course of business is exempt from the tax imposed on a "sale at retail" because the state will presumably collect the sales tax at the time of "resale," thereby avoiding double taxation. Respondents argue that their purchase of the amusement devices is exempt because respondents will resell the use of the amusement devices to their customers. We must therefore determine whether respondents' purchase of

the amusement devices was a purchase for resale under Minn.Stat. § 297A.01, subd. 4.

Minnesota Statutes § 297A.01, subd. 3 (1998), defines sales that are subject to sales and use tax as follows:

A "sale" and a "purchase" includes, but is not limited to, each of the following transactions:

(a) Any transfer of title or possession, or both, of tangible personal property, whether absolutely or conditionally, and the leasing of or the granting of a license to use or consume tangible personal property other than manufactured homes used for residential purposes for a continuous period of 30 days or more, for a consideration in money or by exchange or barter;

* * * *

(d) The granting of the privilege of admission to places of amusement, recreational areas, or athletic events, except a world championship football game sponsored by the national football league, and *the privilege of having access to and the use of amusement devices,* tanning facilities, reducing salons, steam baths, turkish baths, health clubs, and spas or athletic facilities[.]

(Emphasis added.)

■ Under subdivision 3(d) the taxable event at issue in this case is the granting of the *privilege* of having access to and the use of amusement devices. For sales tax purposes, the taxable event is not the customers' use of the amusement devices, but rather the customers' acquisition of the privilege of having access to the amusement devices. No actual use of the amusement devices is required when respondents sell tokens to their customers or when customers deposit coins in the devices. If, for example, a person buys a pocketful of tokens but never uses them, the purchase is nevertheless a taxable event. Whether the customers actually use the devices after paying consideration for the privilege of having access to the devices is not rele-

vant to the taxation. Thus, we are not persuaded by the *Minntertainment* court's reasoning that having access to an amusement device is a use, a use is a sale, and the initial purchase is necessarily a purchase for resale.

We first dealt with section 297A.01, subd. 4, in *Sellner Mfg. Co., Inc. v. Commissioner of Taxation*, 295 Minn. 71, 72, 202 N.W.2d 886, 889 (1972), where we held that the sale of amusement ride equipment was not taxable because the equipment was delivered out of state. Implicit in *Sellner* is the view that had the amusement ride remained in Minnesota, the purchase of the amusement device would have been a taxable event.

We examined section 297A.01, subd. 4, most recently in *Minnesota Twins*. We held there that the Minnesota Twins did not resell ticket stock and novelty items to their fans, but instead provided those items as part of the fans' overall purchase of the service of being entertained by a ball game. *See Minnesota Twins*, 587 N.W.2d at 290. We held that customers did not pay consideration for the actual ticket stub, but instead bought the privilege of having access to the service of being entertained. *See id.* at 289–90. Supplies purchased and used for the purpose of providing services are ultimately used by the service provider, who is in turn responsible for sales or use tax. *See id.* at 289.

Similarly here, customers purchase tokens or deposit coins in the amusement devices in order to be entertained by the devices. Customers who pay for "the priv-

ilege of having access to and the use of amusement devices" do not temporarily purchase the amusement devices themselves, or purchase a license [6] to operate the devices as argued by respondents. Instead, customers pay for the amusement that they expect to receive from the device. Respondents' purchase of the amusement devices was not for the purpose of resale, but rather to support the service of entertainment provided by respondents. The taxation of the purchase of the amusement devices does not violate the general sales tax scheme in Minnesota that seeks to impose tax only on sales of the finished product to the ultimate user. *See Black Photo U.S.A., Inc. v. Commissioner of Revenue*, 498 N.W.2d 433, 434 (Minn.1993).

We have stated that, "[i]n ascertaining legislative intent, administrative interpretations of a statute may be considered, and where such interpretations are of long standing, they are entitled to great respect and should not be disturbed except for very cogent reasons." *Gale v. Commissioner of Taxation*, 228 Minn. 345, 351, 37 N.W.2d 711, 716 (1949) (internal citation omitted); *see also Governmental Research Bureau, Inc. v. St. Louis County*, 258 Minn. 350, 357, 104 N.W.2d 411, 416 (Minn. 1960). The decision in *Minntertainment* was a contravention of the Commissioner's long-standing interpretation that the purchase of an amusement device is not for the purpose of resale but is a taxable event. A sales tax fact sheet produced by the Department of Revenue in July 1988 states: "you must pay sales tax when you

6. Respondents rely on *Copy Duplicating Products, Inc. v. Commissioner of Revenue*, No. 6378, 1995 WL 412579 (Minn. T.C. July 10, 1995), to support their alternative argument that they grant a license of use to their customers, which would be a resale for tax purposes. In *Copy Duplicating*, the Commissioner attempted to impose a fair-market value tax on copy machines when they were converted from leased copiers to coin-operated machines placed in public areas. The tax court rejected the Commissioner's imposition of tax on the copiers, holding that both leases

and the granting of a use license are contained in Minn.Stat. § 297A.01, subd. 3(a) (1998). *See* 1995 WL 412579 at *3. The court held that such a conversion did not alter the non-taxable resale characteristic of these copiers. The tax court rejected the Commissioner's analogy of copiers to amusement devices because it failed "to see how copiers are machines providing amusement under Minnesota statutes." *Id.* at *6. As amusement devices are specifically governed by Minn.Stat. § 297A.01, subd. 3(d), we are not persuaded by respondents' license argument.

purchase items that you use in providing services to your customers such as * * * recreation equipment and coin operated amusement devices such as ping pong, pool tables, foosball, golf and volleyball equipment, pinball machines, juke boxes, etc." Similar language is contained in a 1981 sales tax newsletter produced by the Department, and in subsequent newsletters and fact sheets produced for taxpayers. The Commissioner's long-standing interpretation was that sales tax was due when these devices were purchased by vendors, and we reach the same conclusion.

When the tax court issued *Minntertainment*, the purchase for resale provision of the sales tax statute did not contain any specific reference to coin-operated amusement devices. That language was, as we have observed, added in the 1997 Amendment. The language seems clearly to have been intended to, and in fact did, address the decision in *Minntertainment*. The statute refers pointedly to coin-operated dispensers of goods or services; it exempts cases "currently pending before the Minnesota Supreme Court" (an appeal of *Minntertainment* was currently pending before this court); and the case was discussed on the floor of the Senate. Nevertheless, the tax court in this case decided that the 1997 Amendment *affirmed* the tax court's holding in *Minntertainment*. The tax court reasoned that because it had said that Minntertainment did not sell the "service" of providing entertainment, in order to overrule *Minntertainment* the legislature would have had to expand the definition of taxable "services" to include the "service of providing entertainment."

Although amending the definition of services would have been one way to address the *Minntertainment* decision, we believe the legislature intended to achieve the same result with the addition of subdivision 4(i) to section 297A.01. In that amendment the legislature expressly stated that coin-operated devices that "furnish, pro-

vide, or dispense goods or services" shall not be considered property for resale. *Id.* The most reasonable interpretation of this language is that the legislature intended to define the universe of coin-operated machines by including those that furnish goods *and* services. The tax court's reading would mean that the legislature thought there was a third category of coin-operated machines that provides neither goods nor services, that amusement devices fall within that category, and that this undefined third category of machines should be treated differently for sales tax purposes. We can see no logical reason why the legislature would intend such a result and decline to interpret the amendment in that manner. *See* Minn.Stat. § 645.17(1) (1998) (establishing presumption that legislature does not intend absurd or unreasonable result). Rather, it is clear that the legislature considered coin-operated devices to dispense a service, notwithstanding the opinion of the tax court to the contrary.

▬▬ The 1997 Amendment contained language indicating that it was a "clarifying amendment," not intended to change, but to clarify the law. Naturally, we are not bound to and do not accept the legislature's interpretation of a prior legislature's intent.[7] Because the legislature in 1997 said that amusement devices dispense services does not mean that that was the law before the amendment. However, it does not *preclude* an interpretation consistent with the legislature's "clarification."

We are of the opinion that respondents do not resell the devices, but that respondents sell the service of entertainment to their customers through the use of the devices. Moreover, we hold that this was the intended application of the law even before the 1997 Amendment and thus disagree with the contrary conclusion in *Minntertainment*.

---

7. *See Anderson v. Firle,* 174 Minn. 333, 337, 219 N.W. 284, 285 (1928) ("We recognize the rule that one Legislature is not the interpreter of the laws enacted by a prior Legislature.").

Because we hold that *Minntertainment's* construction of chapter 297A was erroneous, we need not address respondents' arguments on the constitutionality of the 1997 Amendment's retroactivity. The 1997 Amendment did not change the law; it reaffirmed the law's proper pre-*Minntertainment* meaning.

The decision of the tax court is reversed.

Reversed.