**CUSTOM AG SERVICE
OF MONTEVIDEO,
INC., Relator,**

v.

**COMMISSIONER OF REVENUE,
Respondent.**

No. A06–1645.

Supreme Court of Minnesota.

March 22, 2007.

Stephen F. Rufer, Chad R. Felstul, Pemberton, Sorlie, Rufer & Kershner, PLLP Fergus Falls, MN, for Relator.

Lori Swanson, Minnesota Attorney General, Rita Coyle DeMeules, Assistant Attorney General, St. Paul, MN, for Respondent.

## OPINION

PAUL H. ANDERSON, Justice.

In 2003, the Minnesota Department of Revenue assessed Custom Ag Service of Montevideo, Inc. (Custom Ag), a Minnesota corporation, with approximately $94,200 in unpaid sales and use taxes for tax years 2000, 2001, and 2002. The use taxes were assessed on grain bins and other items that Custom Ag purchased from an Indiana vendor to serve as components in grain drying systems that Custom Ag installed on Minnesota farms. Custom Ag appealed the use tax assessment to the Commissioner of Revenue on the ground that the grain bins qualified as tax-exempt grain dryers or other tax-exempt farm machinery under Minn.Stat. § 297A.01, subd. 15 (2000). The Commissioner upheld the assessment, and Custom Ag appealed to the Minnesota Tax Court. Custom Ag and the Commissioner then filed cross-motions for summary judgment on stipulated facts. The tax court found that Custom Ag used the grain bins in Minnesota and was therefore liable for use tax under Minn.Stat. § 297A.14, subd. 1 (2000), regardless of the fact that the bins served as components of the grain drying systems Custom Ag sold to its customers. Accordingly, the tax court granted the Commissioner's motion and denied Custom Ag's motion. Custom Ag filed a writ of certiorari with our court for review of the tax court's decision. We affirm.

Relator Custom Ag Service of Montevideo, Inc. is a Minnesota corporation that sells and installs farm equipment, including grain drying systems. Each grain drying system Custom Ag installs comprises several components: a wet holding bin, a grain dryer, a conditioning bin, and other miscellaneous parts. The wet holding bin and conditioning bin themselves comprise multiple parts, including, among others, a grain bin, perforated and support flooring, roof vents, ladders with cages and platforms, and fans and power sweeps. The record shows that the operation of Custom Ag's grain drying system is relatively straightforward. A farmer places newly harvested grain into the wet holding bin, and then the grain is automatically transferred to the grain dryer. Once the grain has passed through the dryer, it is automatically transferred to the conditioning bin for cooling and further drying.

Custom Ag purchases some of the components for its grain drying systems from CTB, Inc./Brock Grain Systems, of Milford, Indiana (Brock). In some cases, Custom Ag combines purchased components with existing components at a customer's farm to create a grain drying system. Custom Ag did not pay sales or use taxes on its purchases from Brock during tax years 2000, 2001, or 2002. In 2003, the Minnesota Department of Revenue issued to Custom Ag a Notice of Change in Sales and Use Tax, and a Sales and Use Tax Audit Report Explanation of Adjustments. According to these documents, Custom Ag owed $94,203.80 in unpaid taxes and interest for, among other things, grain bins and related parts that Custom Ag purchased from Brock.[1]

---

1. Part of the $94,203.80 is attributable to unpaid sales taxes for "miscellaneous sales" that Custom Ag made to its customers, but the sales tax portion of the assessment is not at issue in this appeal.

Custom Ag filed an administrative appeal challenging the assessment with the Commissioner of Revenue, asserting that its grain bins were exempt from *sales tax* because they were products "used in the processing, drying and/or handling of a grain commodity." Custom Ag noted in its appeal that a representative of the Commissioner had earlier told Custom Ag that such products were tax exempt. The Commissioner denied Custom Ag's appeal, explaining that Custom Ag was subject to *use tax* rather than sales tax for the contested purchases from Brock, and that

> [t]he requirement to accrue and pay use tax is different from collecting sales tax from your customers. * * * [Brock] should have collected sales tax on [its] sales of materials to you. If [it] did not, you were responsible to have accrued and paid use tax on those materials.

The Commissioner also noted that while farm machinery—including grain dryers—was exempt from use tax under Minn.Stat. § 297A.01, subd. 15,[2] grain bins were expressly excluded from the statutory definition of exempt farm machinery—and "[a]ttaching grain coolers/fan units and grain dryers to grain bins does not * * * change grain bins into something other than grain bins."

Custom Ag appealed the Commissioner's determination to the tax court, and the parties filed cross-motions for summary judgment based on stipulated facts. Custom Ag argued that although it purchased grain bins from Brock and grain bins are subject to tax under section 297A.01, subd. 15, "in their traditional form," Custom Ag did not sell grain bins for the purposes of section 297A.01. Custom Ag asserted that

because it transformed the bins into integral components of a grain drying system—in effect, a grain dryer—the bins were tax exempt. Custom Ag argued in the alternative that if the grain bins it purchased from Brock were not tax exempt as integral components of a grain dryer, they were tax exempt as farm machinery generally. The Commissioner argued that Custom Ag's use of the grain bins as components in a grain drying system did not transform the bins into tax-exempt grain dryers, and accordingly, the grain bins were subject to tax according to the plain language of section 297A.01, subd. 15. Adopting reasoning similar to the Commissioner's, the tax court granted the Commissioner's motion for summary judgment and denied Custom Ag's motion for the same. *Custom Ag Serv. of Montevideo, Inc. v. Comm'r of Revenue*, No. 7714R, 2006 WL 2380596, at *3–6 (Minn. T.C. Aug. 2, 2006).

On certiorari to our court, Custom Ag asks us to determine whether the grain bins it purchased from Brock are tax exempt under Minn.Stat. ch. 297A (2000) as grain dryers or as farm machinery generally. We will review an order of the tax court on certiorari if, among other things, the order is not in conformity with the law. Minn.Stat. § 271.10, subd. 1 (2006). The tax court's application of the law to stipulated facts is a question of law that we review de novo. *Morton Bldgs., Inc. v. Comm'r of Revenue*, 488 N.W.2d 254, 257 (Minn.1992). We have stated that "[t]he general goal of sales and use taxes is to establish a complementary scheme whereby every sale is presumed taxable unless specifically exempted," and the burden of

---

**2.** The legislature renumbered and changed sections within Minn.Stat. ch. 297A for style, form, and clarity in 2000. Act of Apr. 18, 2000, ch. 418, art. 1, 2000 Minn. Laws 796, 796–850. Because the audit of Custom Ag spanned both the original and the recodified versions of the statutes and because the recodification was not intended to make any substantive changes, we cite the original (i.e., the 2000) statutes in this opinion.

proving an exemption rests with the party who seeks it. *A & H Vending Co. v. Comm'r of Revenue,* 608 N.W.2d 544, 548 (Minn.2000) (citation omitted); *see also Am. Ry. Express Co. v. Holm,* 169 Minn. 323, 325, 211 N.W. 467, 467 (1926) ("One who seeks shelter under an exemption must present a clear case, as the law is to be construed in favor of the public.").

The dispute before us centers on the interpretation of certain statutes within Minn.Stat. ch. 297A. The relevant statutes are as follows. Minnesota Statutes § 297A.02, subd. 1 (2000), imposes a sales tax:

> Except as otherwise provided in [chapter 297A], there is imposed an excise tax of 6.5 percent of the gross receipts from sales at retail made by any person in this state.

Minnesota Statutes § 297A.14, subd. 1, imposes a use tax:

> For the privilege of using, storing, distributing, or consuming in Minnesota tangible personal property or taxable services purchased for use, storage, distribution, or consumption in this state, a use tax is imposed on every person in this state at the rate of tax imposed under section 297A.02 on the sales price of sales at retail of the items, unless the tax imposed by section 297A.02 was paid on the sales price.

> A use tax is imposed on every person who uses, stores, distributes, or consumes tangible personal property in Minnesota which has been manufactured, fabricated, or assembled by the person from materials, either within or without this state, at the rate of tax imposed * * * on the sales price of sales at retail of the materials contained in the tangible personal property, unless [sales tax] was paid on the sales price.

Minnesota Statutes § 297A.01, subd. 4(d) (2000), makes certain transactions "sales at retail" such that they are subject to the sales tax:

> Sales of * * * supplies and equipment to owners, contractors, subcontractors or builders for the erection of buildings or the alteration, repair or improvement of real property are * * * "sales at retail" in whatever quantity sold and whether or not for purpose of resale in the form of real property or otherwise.

Minnesota Statutes § 297A.25, subd. 59 (2000), makes farm machinery tax exempt:

> [A]fter June 30, 2000, the gross receipts from the sale of new farm machinery[ ] are exempt.

And finally, Minn.Stat. § 297A.01, subd. 15, defines farm machinery as, in relevant part,

> new or used machinery, equipment, implements, accessories, and contrivances used directly and principally in the production for sale * * * of * * * grains * * *. "Farm Machinery" includes:

> (1) machinery for the preparation, seeding or cultivation of soil for growing agricultural crops and sod, harvesting and threshing of agricultural products, harvesting or mowing of sod, and certain machinery for dairy, livestock and poultry farms;

> (2) barn cleaners, milking systems, *grain dryers,* automatic feeding systems and similar installations, whether or not the equipment is installed by the seller and becomes part of the real property;

> (3) irrigation equipment sold for exclusively agricultural use, including pumps, pipe fittings, valves, sprinklers and other equipment necessary to the operation of an irrigation system when sold as part of an irrigation system, whether or not the equipment is installed by the seller and becomes part of the real property;

> * * * *

Repair or replacement parts for farm machinery shall not be included in the definition of farm machinery.

Tools, shop equipment, *grain bins,* feed bunks, fencing material * * * and other farm supplies *shall not be considered to be farm machinery.*

(Emphasis added.)

*Are Grain Bins Tax–Exempt Grain Dryers?*

Custom Ag argues that because it sold the grain bins purchased from Brock as components of a grain drying system, the bins are tax-exempt *grain dryers* under section 297A.01, subd. 15(2). It argues in the alternative that if the bins are not tax exempt as grain dryers, they are tax exempt as other *farm machinery* under section 297A.01, subd. 15. In support of its alternative argument, Custom Ag asserts that it is necessary to consider the function of a piece of equipment in deciding whether the equipment is farm machinery, and the bins in question are integral parts of a grain drying system and are not used for storing grain. The Commissioner argues in response that the function the grain bins serve is irrelevant to determining Custom Ag's use tax liability because any exercise "of a right or power incidental to ownership" is a taxable use. *See* Minn. Stat. § 297A.01, subd. 6 (2000). The Commissioner further argues that under the plain and unambiguous language of section 297A.01, subd. 15, grain bins are taxable. The Commissioner asserts that because the statutory language is unambiguous, we should not consider Custom Ag's arguments as to the purpose for which the grain bins are used.

■ As an initial matter, we note that Custom Ag's arguments rely on the premise that the way in which the bins were ultimately used by Custom Ag's customers renders inapplicable the plainly-stated provision in section 297A.01, subd. 15, that grain bins "shall not be considered to be farm machinery." Custom Ag makes this argument while conceding that the items it purchased from Brock are grain bins and that grain bins are expressly taxable under Minnesota's tax laws. We conclude that the premise underlying Custom Ag's arguments is problematic because it fails to recognize that for the purposes of the *use tax,* the relevant question is whether Custom Ag purchased and used grain bins in Minnesota—not whether Custom Ag's customers used the grain bins as components of a grain drying system. Minnesota assesses a use tax "[f]or the privilege of using, storing, distributing, or consuming in Minnesota tangible personal property * * * purchased for use, storage, distribution, or consumption in this state." Minn. Stat. § 297A.14, subd. 1. We reasoned in *Morton Buildings* that taxpayers are liable for use taxes on tangible personal property if (1) the property is used, stored, distributed, or consumed in Minnesota; (2) the property is purchased; and (3) the purchase was made for use, storage, distribution, or consumption in Minnesota.[3] 488 N.W.2d at 257–58.

The second and third elements of the foregoing *Morton Buildings* test—that the property be purchased, and that it be purchased for use in Minnesota—are easily satisfied given the facts of this case. It is undisputed that Custom Ag purchased the grain bins from Brock, and there is nothing in the record to suggest that Custom

**3.** In the three-element test articulated in *Morton Buildings,* elements (1) and (3) did not respectively contain the words "distributed" and "distribution." The legislature added these words to Minn.Stat. § 297A.14, subd. 1, in 1993, after we decided *Morton Buildings.* Act of May 24, 1993, ch. 375, art. 9, § 31, 1993 Minn. Laws 2728, 2901.

Ag used the bins for grain drying systems at farm sites outside Minnesota.

As to the first element of the *Morton Buildings* test—that the property is used, stored, distributed, or consumed in Minnesota—"use[d]" is broadly defined under section 297A.01, subd. 6, as having "exercise[d] * * * any right or power over tangible personal property." In keeping with this broad definition, we concluded in *Morton Buildings* that a taxpayer used certain raw materials in Minnesota despite the fact that those materials were purchased outside the state and transformed through a manufacturing process—also outside the state—into building components that the taxpayer ultimately assembled into prefabricated buildings in Minnesota. 488 N.W.2d at 258. We also stated that although the taxpayer altered the raw materials during the manufacturing process,

> the raw materials are still tangible personal property used in Minnesota as parts of [the taxpayer's] prefabricated buildings. * * * This court never has required that raw materials be unaltered when used in Minnesota in order to trigger liability for the use tax.

*Id.* We expressly rejected the taxpayer's argument that the relevant items of property "were not the raw materials [the taxpayer] purchased, but the building components * * * made out of the raw materials, which are new and different items." *Id.* at 257–58 (quotation marks omitted).

█ We conclude that the grain bins Custom Ag purchased from Brock and the grain drying systems Custom Ag sold to its customers are analogous to the raw materials and the building components at issue in *Morton Buildings*. Custom Ag used the grain bins to create grain drying systems that it installed in Minnesota, just as the taxpayer in *Morton Buildings* used raw materials to create the building components it assembled into buildings in Minnesota. Based on this analogy, we further conclude that when deciding whether Custom Ag is liable for use tax, our inquiry should focus on whether Custom Ag used the grain bins in Minnesota, and not on the fact that the grain bins ultimately served as components of new and different items. Applying the foregoing analytical framework to the facts in this case, Custom Ag used the grain bins in Minnesota, and accordingly, all three elements of the *Morton Buildings* test are satisfied.

Custom Ag argues that *Morton Buildings* is inapposite because in that case, the property at issue was not tax exempt, whereas here, the contested property constitutes tax-exempt grain dryers or other tax-exempt farm machinery. We find this argument unpersuasive because our holding in *Morton Buildings* is compatible with the exemption for farm machinery under Minn.Stat. § 297A.01, subd. 15. Specifically, when we analyze a case that implicates the use tax and farm machinery, we first apply the three-element *Morton Buildings* test to determine whether a taxpayer used in Minnesota tangible personal property that the taxpayer purchased for use in Minnesota. If we determine that all three elements of the test are met, we then consult section 297A.01, subd. 15, to determine whether that property, *as used by the taxpayer*, is tax exempt.[4] If the

4. Custom Ag further asserts that the only meaningful distinction between use tax and sales tax is that the former applies to purchases outside the state and the latter to purchases inside the state, and consequently, the only reason this case implicates the use tax is that Custom Ag purchased the grain bins outside the state. But this assertion oversimplifies the relationship between use tax and sales tax. *See Dahlberg Hearing Sys., Inc. v. Comm'r of Revenue*, 546 N.W.2d 739, 743–44 (Minn.1996) (noting that while sales and use

property is tax exempt, the taxpayer is not liable for use tax on it.

We have already determined that all three elements of the *Morton Buildings* test are satisfied with respect to the grain bins in this case. Therefore, we must next determine whether those grain bins, as used by Custom Ag, are tax-exempt under section 297A.01, subd. 15. Despite this section's unambiguous exclusion of grain bins from the definition of tax-exempt farm machinery,[5] Custom Ag argues that because the grain bins serve as integral components of a grain drying system and a grain drying system functions as a grain dryer, the grain bins constitute tax-exempt grain dryers under section 297A.01, subd. 15. This argument is unavailing because, as stated above, we focus on the nature of the property as it is used by the taxpayer, not as it is used by the taxpayer's customers. *Morton Bldgs.*, 488 N.W.2d at 257–58.

■ We also note that the legislature has distinguished tax-exempt grain dryers from taxable grain bins since it first enacted section 297A.01, subd. 15, in 1981,[6] and has maintained this distinction through several periods of amendment since that time. Under such facts, we may not assume a legislative intent in plain contradiction to words used by the legislature. *Mankato Citizens Tel. Co. v. Comm'r of Taxation*, 275 Minn. 107, 111, 145 N.W.2d 313, 316 (1966) (citation omitted). Moreover, the language of the statute indicates that when the legislature intended to exempt a system, as opposed to a single piece of equipment that might be part of that system, it knew how to do so explicitly. For example, section 297A.01, subd. 15(2), (3) (2000), exempts "milking *systems*" and "automatic feeding *systems*" on the one hand, and on the other, "irrigation *equipment* * * * including pumps, pipe fittings, valves," etc. (Emphasis added.) For all of the foregoing reasons, we are not persuaded by Custom Ag's argument that because the grain bins are components of a grain drying system and grain dryers are tax exempt, the bins themselves are tax exempt.

*Are Grain Bins Other Tax–Exempt "Farm Machinery"?*

■ Custom Ag makes an alternative argument that if the grain bins do not constitute tax-exempt grain dryers, they constitute some other form of tax-exempt farm machinery. Custom Ag grounds this argument on several theories. For example, Custom Ag asserts that it sells the bins for use in the production for sale of agricultural crops and for harvesting agricultural products. *See* Minn.Stat. § 297A.01, subd. 15 (defining farm machinery as equipment used "directly and principally" in the production for sale of certain agricultural crops, and including in the definition of farm machinery, equipment for the harvesting of agricultural products). Custom Ag also asserts that the

---

taxes are complementary, they do not serve as a substitute for one another). In *Dahlberg,* we held that a taxpayer who had not used certain otherwise taxable property could not be compelled to pay a use tax simply because an out-of-state vendor erroneously failed to collect a sales tax on the sale of the property to the taxpayer. Id. In other words, we concluded that use tax is not a mechanism by which the Commissioner can automatically recover monies that should have been collect-

ed as sales tax on the sale of property outside the state; rather, the Commissioner can only collect such monies if the statutory requirements for use tax liability are met.

5. Custom Ag acknowledges that section 297A.01, subd. 15, is clear and unambiguous, and states that grain bins are not tax exempt.

6. Act of June 6, 1981, ch. 1, art. 4, § 2, 1981 Minn. Laws 2373, 2394–95.

grain bins could be considered "similar installations" under section 297A.01, subd. 15(2), which defines farm machinery to include "barn cleaners, milking systems, grain dryers, automatic feeding systems and similar installations."

■ We reject these assertions for two reasons. First, they once again focus on the use of the grain bins by Custom Ag's customers, rather than the use of the grain bins by Custom Ag. Second, they essentially invite us to ignore *specific* statutory language that excludes grain bins from the definition of farm machinery in favor of *general* statutory language that includes unspecified agricultural "machinery, equipment, implements, accessories, and contrivances." Minn.Stat. § 297A.01, subd. 15. We decline to accept this invitation. As we have often noted when construing a statute that contains both specific and general provisions, canons of statutory construction dictate that the specific provisions prevail. *See, e.g., In re Welfare of J.M.*, 574 N.W.2d 717, 721 (Minn.1998).

In sum, we conclude that Custom Ag is liable for the use tax the Commissioner assessed against it because Custom Ag used in Minnesota grain bins that it purchased for use in this state. We further conclude that Custom Ag's sale of the grain bins as components of grain drying systems did not transform those bins into tax-exempt grain dryers or other tax-exempt farm machinery under Minn.Stat. ch. 297A. Accordingly, we hold that the tax court acted in conformity with the law when it granted the Commissioner's motion for summary judgment and denied Custom Ag's motion for the same.

Affirmed.