**HOMART DEVELOPMENT CO., Petitioner, Relator,**

v.

**COUNTY OF HENNEPIN, Respondent.**

No. C0-94-2485.

Supreme Court of Minnesota.

Nov. 3, 1995.

Thomas R. Wilhelmy, James E. Dorsey, Minneapolis, for relator.

Michael O. Freeman, Hennepin County Attorney, Mark Kapter Maher, Assistant County Attorney, Minneapolis, for respondent.

## OPINION

ANDERSON, Justice.

This case comes to us on certiorari to the Minnesota Tax Court. Relator, Homart Development Co., challenged the 1991 and 1992 assessments of the market value for its real property located in Bloomington, Minnesota. Pursuant to the statute which establishes the procedure for the prehearing exchange of appraisals in property tax cases, Homart was to furnish its appraisal to the attorney for Hennepin County on the fifth day before the tax assessment hearing. On that day, Homart sent its appraisal to the attorney by facsimile transmission. The appraisal was transmitted after the normal business hours of the attorney's office and after the attorney had left for the day.

The tax court held that sending an appraisal by facsimile transmission after the normal business hours of the recipient did not meet the statutory requirement of furnishing the appraisal at least five days before the hearing, and, as a result, excluded Homart's appraisal and the expert appraisal testimony from the hearing. In its order, the court adopted the market value submitted by Hennepin County's expert appraiser, a market value which was significantly more than what Homart's expert appraiser had estimated. On appeal, Homart argues that the court erred in excluding its appraisal and expert appraisal testimony from the hearing. We reverse.

### I.

The property that is the subject of this appeal is located in the northwest quadrant of the intersection of Interstate 494 and France Avenue in Bloomington, Minnesota. The property, consisting of approximately 179,564 square feet of land, has been improved with a fourteen-story Class A office building known as the Minnesota Center and a five-level parking ramp. The multi-tenant office building and ramp were constructed in 1987, and the office building contains 274,218 square feet of net rentable area. In 1991 and 1992, Homart was the owner and manager of the property.

The property tax assessments giving rise to this action took place on January 2, 1991 and January 2, 1992. On May 15, 1992 and February 24, 1993, Homart filed separate petitions with the tax court challenging Hennepin County's assessments of the market value of the property. The petitions were consolidated, twice set for hearing and continued, with a third hearing set for April 12, 1994.

When settlement talks broke down and the April 12 hearing became imminent, counsel for Homart, Thomas R. Wilhelmy, and counsel for Hennepin County (the County) began discussing various discovery issues, including the furnishing of property tax appraisals prior to hearing. The parties were required by statute to furnish their property tax appraisals to each other at least five days before the hearing on Tuesday, April 12. The last day

to furnish the appraisals within the statutory period was Tuesday, April 5.[1]

In a March 29, 1994 letter to counsel for the County, Wilhelmy raised the issue of appraisal exchange and suggested that the parties "[agree] to a physical exchange the afternoon of April 5th." The next day, March 30, 1994, Wilhelmy telephoned Assistant Hennepin County Attorney Mark Kapter Maher concerning the exchange. During the conversation, Maher informed Wilhelmy that the County was not in a position to agree to a physical exchange of appraisals on the afternoon of April 5, as suggested in Wilhelmy's letter. But Maher did confirm that the appraisal exchange was to take place on that date.

At approximately 2:00 p.m. on April 5, Maher received two copies of the County's appraisal from its appraiser. Shortly thereafter, at approximately 3:00 p.m., Maher received a telephone call from Wilhelmy, who asked whether an exchange of appraisals by mail would be acceptable. Maher said no, stating that under the Minnesota Rules of Civil Procedure, an exchange by mail was required to have taken place three days earlier. Wilhelmy then informed Maher that he was in Duluth at the offices of Ramsland and Vigen, appraisers for Homart, and, according to Maher, Wilhelmy indicated that "delivery of [Homart's] appraisal could not be made at that point." Wilhelmy asked Maher for the fax number of his office and indicated that he would fax the appraisal to Maher's office. Maher gave Wilhelmy the fax number of his office, and the telephone conversation ended.[2] Maher then made arrangements to deliver the County's appraisal to Wilhelmy. The County's appraisal was delivered to Wilhelmy's law office by personal messenger at 4:39 p.m. that afternoon.

During the early evening hours of that same day, Homart sent its appraisal to the Hennepin County Attorney's Office by facsimile transmission. The exact timing of the facsimile transmission is unclear from the record. Betty S. Ramsland, an employee of Homart's appraiser, stated in an affidavit that the transmission of the appraisal began at approximately 6:15 p.m. and continued until 7:10 p.m.; however, the fax machine at the Hennepin County Attorney's Office recorded that the appraisal was transmitted between 6:09 p.m. and 6:57 p.m. In either case, the appraisal was transmitted after the closing of the Hennepin County Attorney's Office at 5:00 p.m. and after Maher had left for the day, but before midnight on the fifth day before the hearing. Homart's appraisal consisted of approximately 150 pages, but for a reason not apparent, the last seven pages of the appraisal were not received by the County.

In addition to sending the appraisal to the County by facsimile transmission, Wilhelmy also arranged to have a messenger deliver an original version and a copy of the appraisal. At approximately 10:15 p.m. that same evening, Homart's messenger attempted to deliver the appraisal to a security guard at the Hennepin County Government Center, but the guard refused to accept the appraisal. The messenger then attempted to deliver the appraisal to the Hennepin County Sheriff's Office. The Sheriff's Office similarly refused to accept the appraisal. The following day, Wednesday, April 6, at approximately 7:30 a.m., Homart's messenger personally delivered an original version and a copy of the appraisal to a secretary at the Hennepin County Attorney's Office.

The next morning, April 7, the County filed a motion in limine to exclude Homart's appraisal and expert appraisal testimony from the hearing. The basis for the motion was Homart's alleged failure to furnish its appraisal to the County at least five days

---

1. The tax court has determined that Rule 6.01 of the Minnesota Rules of Civil Procedure governs the computation of time for purposes of appraisal exchange. *See Lyman Lumber Co. v. County of Hennepin*, TC–11620, TC–14736, TC–17237, 1993 WL 25399 (Minn.Tax Ct. Feb. 5, 1993). Rule 6.01 provides that "[w]hen the period of time prescribed or allowed is less than 7 days, intermediate Saturdays, Sundays, and legal holidays shall be excluded in the computation."

2. In his brief, Maher stated that he informed Wilhelmy that he did not believe that an appraisal sent by facsimile transmission would comply with the statute, but Maher's affidavit does not contain this assertion. Because Homart does not claim that Maher consented to furnishing the appraisal by facsimile transmission, consent is not at issue here.

before the hearing. On April 11, the tax court issued its order, finding that "sending the appraisal by facsimile transmission at 6:15 p.m., after normal business hours, without Respondent's [County's] agreement to accept the facsimile transmission at that hour, does not meet the statutory requirement of furnishing the appraisal at least five days before the hearing." The court thus excluded Homart's appraisal and the testimony of its expert witness appraiser from the hearing.[3]

The hearing started on schedule on April 12 and concluded on April 18. The Hennepin County Assessor had estimated the market value of the property at $23,665,100 for 1991 and $20,401,200 for 1992. At the hearing, Mary Gabryel, manager of operating property analysis and tax compliance for Homart, testified that Homart estimated the property to have a value of between $18,000,000 and $19,000,000 for 1991 and between $17,000,000 and $18,000,000 for 1992. Homart's expert appraiser would have testified that the estimated market value of the property was $18,000,000 for 1991 and $17,000,000 for 1992. Because Homart could not call its own appraiser as an expert witness, it called the County's expert appraiser as a hostile witness. The County's expert appraiser testified that the estimated market value of the property was $22,000,000 for 1991 and $19,000,000 for 1992.

The tax court entered judgment on September 12, 1994, and adopted the market value submitted by the County's expert appraiser. The court also ordered Homart to pay the County's expert appraiser $7,500 for his appraisal, plus $150 per hour for his testimony at the hearing. Homart moved to amend the findings of fact, conclusions of law and order, arguing among other things that the court's ruling regarding the furnishing of appraisals effectively imposed a requirement of personal service. The court denied Homart's motion, stating that "[a]ppraisals may be sent by mail or even pony express and will not be excluded if the appraisal is received at least five days before the trial. Parties may

elect to have appraisals served personally but the Court is not imposing that requirement."

On appeal, Homart argues that the tax court erred because an appraisal may be furnished at any time before midnight on the fifth day before the hearing. Homart also argues that either sending an appraisal by facsimile transmission or delivering it to a security guard complies with the requirement that it "furnish" the appraisal at least five days before the hearing. Finally, Homart argues in the alternative that the tax court's interpretation of "day" to mean "normal business hours" is unconstitutionally vague.

II.

◼ This court's review of tax court decisions is governed by the provisions of Minn. Stat. § 271.10, subd. 1 (1994), which limits review to cases where it is argued that the tax court was without jurisdiction, the decision was not justified by the evidence or in conformity with law, or the tax court committed an error of law. *Morton Bldgs., Inc. v. Commissioner of Revenue*, 488 N.W.2d 254, 256–57 (Minn.1992). Because the parties do not dispute the relevant facts, we are faced with a question of law which we review de novo. *Id.* at 257.

We first address Homart's argument that the tax court erroneously interpreted the word "day" to mean "normal business hours of the recipient" for purposes of furnishing property tax appraisals. Homart argues that the term "day" in the appraisal exchange statute comprises the 24–hour period extending from midnight to the next midnight.

◼ Minnesota Statutes section 278.05 establishes the procedure for the prehearing exchange of appraisals in property tax cases. This statute provides in pertinent part that:

the county assessor shall furnish the petitioner at least five days before the hearing under this chapter with the property's appraisal, if any, which will be presented to the court at the hearing. *The petitioner*

---

**3.** The tax court has determined that the proper sanction for failing to timely furnish an appraisal is the exclusion of the appraisal and the apprais-

er's testimony. *Haage v. County of Hennepin*, TC–13325, TC–16757, 1993 WL 19938 (Minn.Tax Ct. January 29, 1993).

*shall furnish to the county assessor*[4] *at least five days before the hearing under this chapter with the property's appraisal, if any, which will be presented to the court at the hearing.* An appraisal of the petitioner's property done by or for the county or by or for the petitioner shall not be admissible as evidence if the provisions within this paragraph are not met.

Minn.Stat. § 278.05, subd. 6(b) (1992)[5] (emphasis added). The interpretation of a statute is a question of law subject to de novo review. The object of statutory interpretation is to determine and to give effect to the legislature's intent. Minn.Stat. § 645.16 (1994). When the words of a statute are unambiguous, we must give effect to their plain meaning. *Tuma v. Commissioner of Econ. Sec.,* 386 N.W.2d 702, 706 (Minn.1986).

■ The Minnesota rules of statutory construction provide that "unless the context clearly indicates otherwise * * * 'Day' comprises the time from midnight to the next midnight." Minn.Stat. § 645.45(9) (1994). We are unpersuaded that the context of the statute considered here warrants any departure from such clear legislative intent. Moreover, this court has interpreted "a day," unless expressly qualified or limited, to mean a "24–hour period extending from one midnight to the next midnight." *Nelson v. Sandkamp,* 227 Minn. 177, 182, 34 N.W.2d 640, 643 (1948). To limit the period in which to furnish the appraisal to the normal business hours of the recipient is to engraft upon the statute a requirement that is contrary to the language of the statute and the intention

of the legislature. *Seifert v. City of Minneapolis,* 298 Minn. 35, 43, 213 N.W.2d 605, 609 (1973). We accordingly hold that the term day in Minn.Stat. § 278.05 comprises the 24–hour period extending from one midnight to the next midnight.

### III.

Homart next argues that sending an appraisal by facsimile transmission prior to midnight on the fifth day before the hearing complies with the statutory requirement that appraisals be furnished at least five days before the hearing.

The Minnesota rules of statutory construction provide that in construing the statutes of this state, words and phrases are to be construed according to their common and approved usage, unless to do so would be inconsistent with the manifest intent of the legislature. *See* Minn.Stat. § 645.08 (1994); *Kugling v. Williamson,* 231 Minn. 135, 139, 42 N.W.2d 534, 538 (1950). "Furnish" is defined as "to supply [or] provide." *Black's Law Dictionary* 675 (6th ed.1990). The word "furnish" is often used because the alternatives are too specific:

> furnish is a useful word in the drafting of contracts because its alternatives—*deliver, give, assign, transmit,* and the like—are often too specific about the means of supplying a thing. *Furnish* can be usefully vague.

Bryan A. Garner, *A Dictionary of Modern Legal Usage* 378 (2d ed.1995).

---

4. Homart's furnishing of its appraisal to the county attorney rather than the county assessor is not an issue here because the parties agreed to such practice. *See also Lyman Lumber Company v. County of Hennepin,* TC–11620, TC–14736, TC–17237, 1993 WL 25399 (Minn.Tax Ct. Feb. 5, 1995) (approving the practice of the delivery of income and expense data and appraisals to the county attorney rather than the county assessor).

5. This statute was amended in 1994 to read: (b) Provided that the information as contained in paragraph (a) is timely submitted to the county assessor, the county assessor shall furnish the petitioner at least five days before the hearing under this chapter with the property's appraisal, if any, which will be presented to the court at the hearing. The petitioner shall furnish to the county assessor at least five days before the hearing under this chapter with the property's appraisal, if any, which will be presented to the court at the hearing. An appraisal of the petitioner's property done by or for the county shall not be admissible as evidence if the county assessor does not comply with the provisions in this paragraph. The petition shall be dismissed if the petitioner does not comply with the provisions in this paragraph. Minn.Stat. § 278.05, subd. 6(b) (1994). This amendment is effective for petitions relating to property taxes payable in 1995 and thereafter. Act of May 5, 1994, ch. 587, art. 5, § 32, 1994 Minn.Laws, 1043, 1127–28. Because the petitions considered here relate to property taxes payable prior to 1995, this amendment does not affect the resolution of this case.

■ The legislature has used the term "furnish" in literally hundreds of statutes, often, as here, without defining the term. Only in a limited number of statutes has the legislature narrowly defined the term.[6] Because the legislature did not define "furnish" in this statute to specifically *exclude* facsimile transmission, it would be improper for this court to impose any stricter limitation on the term than that crafted by the legislature. Where, as here, the words of a statute are clear and free from ambiguity, "we have no right to construe or interpret the statute's language. Our duty in such a case is to give effect to the statute's plain meaning." *Tuma,* 386 N.W.2d at 706. Furnishing a property tax appraisal by facsimile transmission falls within the common and approved usage of "furnish." Accordingly, we hold that the facsimile transmission of a property tax appraisal complies with the furnishing requirement of Minn.Stat. § 278.05, subd. 6(b).

By holding that Homart did furnish its property tax appraisal to the County, this court does not establish that facsimile transmission is the exclusive or the best way to furnish property tax appraisals—only that the statute permits it. Due to certain technical difficulties inherent in the facsimile transmission of appraisals, counsel should approach facsimile transmission with caution, especially, as here, when an appraisal contains over 150 pages. It may be prudent for counsel to consult with and to obtain the consent of opposing counsel prior to furnishing an appraisal by facsimile transmission, but the statute does not impose, nor does this court mandate, any such requirement.

Homart also argues that its attempted delivery of the appraisal by messenger to a security guard at the Hennepin County Government Center complies with the statutory requirement to furnish appraisals, and, in the alternative, that the tax court's interpretation of "day" is unconstitutionally vague. Because we hold that Homart did furnish an appraisal to the County by facsimile trans-

mission on the fifth day before the hearing, we need not reach these issues.

Reversed and remanded.

---

6. *See* Minn.Stat. § 302A.463 (defining "furnish" to mean that a "corporation shall deliver or mail, postage prepaid, the financial statements to the address specified by the requesting shareholder").