**DAHLBERG HEARING SYSTEMS, INC., Relator,**

**v.**

**COMMISSIONER OF REVENUE, Respondent.**

No. C2–95–1929.

Supreme Court of Minnesota.

April 26, 1996.

Thomas R. Muck, Minneapolis, for appellant.

Hubert H. Humphrey, III, Barry R. Greller, Office of Atty. Gen., Tax Litigation Div., St. Paul, for respondent.

## OPINION

KEITH, Chief Justice.

Relator, Dahlberg Hearing Systems, Inc. (Dahlberg), seeks review of a Minnesota Tax Court order denying Dahlberg's claim for a refund of use taxes paid. The tax court ruled that the use tax was applicable because Dahlberg "used" computer equipment in Minnesota and because sales tax was not paid on the purchase of the computer equipment. We reverse.

The parties have stipulated to the following facts. Dahlberg is a company located in Golden Valley, Minnesota that manufactures and sells hearing aids and related devices primarily through a franchise system of independent contractor franchises. Dahlberg's franchisees maintain hearing centers at which franchisee personnel check each client's hearing and sell hearing instruments and related products. Franchisee personnel produce an audiogram and take an impression of the client's ear. The audiogram and the impression are then sent to Dahlberg at its Minnesota facility.

During the January 1, 1989 through December 31, 1991 tax periods, Dahlberg pur-

chased certain computer equipment from Hewlett Packard to be provided to franchisees, all of whom (except one in Edina, Minnesota) were located in other states. Although Hewlett Packard had a Minnesota sales office, it maintained no inventory of the computer equipment in Minnesota. All orders were accepted outside Minnesota and shipped via interstate trucking firm from various Hewlett Packard manufacturing facilities outside of Minnesota, and were received by Dahlberg at its Minnesota facility. Although Hewlett Packard was registered to collect sales tax under Minn.Stat. ch. 297A, it did not bill or collect sales tax from Dahlberg on the computer equipment sales.

Once the computer equipment arrived at Dahlberg's facility, Dahlberg personnel unpacked the computer equipment and copied software into each computer's hard drive. Dahlberg personnel then connected the computer, printer, and a modem with cables and tested each computer for proper functioning. After being tested, the computer equipment was disconnected, reboxed and sent via interstate trucking firm to franchisees in 30 states. After the computer equipment arrived at the franchisee's location, Dahlberg personnel traveled to the franchisee's location and installed the computer equipment. Dahlberg expected that the computer equipment would remain in those other states for its useful life and would never be returned to Minnesota.

Dahlberg did not use any of the computer equipment in Minnesota, except for one set kept in Minnesota by Dahlberg to help deal with operating problems franchisees might have with the computer equipment. The franchisees used the computer equipment for customer management, advertising and operations controls, to keep track of sales prospects, to follow up on customers with post-sales correspondence, and to keep track of receivables. The computer equipment remained the property of Dahlberg and Dahlberg had the right to repossess the equipment in the event of expiration or termination of a franchise.

Although Hewlett Packard did not collect sales tax on the computer equipment transactions, Dahlberg did timely remit use taxes

for the tax period in question on the purchase of the computer equipment. Because the transactions took place several years ago, Dahlberg is unable to determine why sales tax was not collected by Hewlett Packard and instead use tax was paid by Dahlberg.

Dahlberg's outside public accounting firm later determined that Dahlberg should not have paid a use tax for the processing of the computer equipment and advised Dahlberg to file a refund claim. Dahlberg filed a tax refund claim on February 11, 1992 for the use tax paid in the amount of $56,888.67, plus interest. After resolution of portions of its claim at the administrative level and by stipulation, the amount of the refund claim remaining in dispute on appeal is $47,854.48 in tax, plus interest.

After the Commissioner denied Dahlberg's claim, Dahlberg appealed to the tax court, which affirmed. The court found that Dahlberg 'used' the computer equipment in Minnesota by exercising its rights to take possession of the equipment in Minnesota, installing software and testing the equipment in this state. The court also concluded that the sales and use taxes are complementary taxes designed to exact an equal tax based on the percentage of the purchase price of the property in question. Because the sales and use taxes are complementary, the tax court concluded that Dahlberg was required to pay a use tax since sales tax was not paid. Dahlberg then filed a petition for a writ of certiorari to this court.

I.

"This court's review of tax court decisions is governed by the provisions of Minn.Stat. § 271.10, subd. 1 (1994), which limits review to cases where it is argued that the tax court is without jurisdiction, the decision was not justified by the evidence or in conformity with law, or the tax court committed an error of law." *Homart Dev. Co. v. County of Hennepin*, 538 N.W.2d 907, 910 (Minn.1995). Because this case reaches this court on stipulated facts, the court is faced with a question of law which it reviews de novo. *Id.*

Dahlberg argues that installing software and testing the computer equipment are processing activities that do not constitute use. Dahlberg further argues that a use tax does not apply where the intended uses of the computer equipment were to take place in other states. The tax court ruled that the use tax applies because Dahlberg "used" the computer equipment in Minnesota by exercising its rights to take possession of the equipment, installing software and testing the equipment in this state.

Use taxes were introduced in the 1930s to counteract the tendency of consumers to shop in states with low or no sales taxes and are designed to place in-state and out-of-state sellers on the same footing. *Morton Bldgs., Inc. v. Commissioner of Revenue*, 488 N.W.2d 254, 257 (Minn.1992). If a consumer buys a product out-of-state but pays no sales tax, the use tax is imposed when the item is brought into the state for use. *Id.* Minnesota enacted its first sales and use tax statutes in 1967, as codified at Minn.Stat. § 297A.14, subd. 1 (1990):

> For the privilege of using, storing or consuming in Minnesota tangible personal property or taxable services purchased for use, storage, or consumption in this state, a use tax is imposed on every person in this state at the rate of tax imposed under section 297A.02 on the sales price of sales at retail of the items, unless the tax imposed by section 297A.02 was paid on the sales price.

Because sales tax was not paid on the computer equipment, a use tax is potentially applicable on the transactions. *See Id.* (use tax imposed for the use, storage, or consumption of personal property unless sales tax was paid). Dahlberg argues, however, that even though sales tax was not paid, a use tax is not applicable due to the processing exception to the use tax codified at Minn.Stat. § 297A.01, subd. 7 (1990), as follows:

> Subd. 7. "Storage" and "use" do not include the keeping, retaining or exercising of any right or power over tangible personal property or tickets or admissions to places of amusement or athletic events shipped or brought into Minnesota for the purpose of subsequently being transported

outside Minnesota and thereafter used solely outside Minnesota, * * * or for the purpose of being processed, fabricated or manufactured into, attached to or incorporated into other tangible personal property to be transported outside Minnesota and not thereafter returned to a point within Minnesota, except in the course of interstate commerce.

Dahlberg also cites to Department of Revenue regulations that establish a processing exception to the use tax. For example, Minn.R. 8130.1300 provides, in pertinent part, that:

> "Use" does not include storing personal property to be used in the ordinary course of an owner's trade or business where such personal property is subsequently shipped or delivered to an ultimate destination outside Minnesota without being put to intermediate use in this state and thereafter not returned to Minnesota except in the course of interstate commerce. (As used herein, the term "intermediate use" does not include processing, fabricating, or manufacturing into or incorporating into other tangible personal property or testing or modifying tangible personal property but includes consuming or enjoying the beneficial use of the property.)

Dahlberg also argues that Minn. R. 8130.1400 similarly establishes a processing exception to the use tax:

> 8130.1400 Temporary Storage and Use in Minnesota
>
> Where tangible personal property or tickets of admission to places of amusement or athletic events are shipped or brought into Minnesota for the purpose of subsequently being transported outside Minnesota, and such items are not intended to be returned to Minnesota except in the course of interstate commerce, definitions of "storage and use" * * * are not applicable thereto.
>
> Similarly, where tangible personal property is shipped or brought into Minnesota for the purpose of being processed, fabricated, or manufactured into other tangible personal property, or is incorporated or attached to other tangible personal property, and thereafter transported outside

Minnesota, and such property is not intended to be returned to Minnesota except in the course of interstate commerce, the definitions of storage and use are not applicable thereto.

\* \* \* \*

Example 2. Z corporation purchased equipment in Wisconsin and requested that the vendor deliver the property to Z in Minnesota for inspection and testing. Upon completion of the tests on the equipment, which proved to be satisfactory, the equipment was shipped to Z factory in California. The testing and inspecting of the equipment in Minnesota does not constitute either storage or use as defined in Minnesota Statutes, section 297A.01, subdivision 5 or 6, respectively.

We find Dahlberg's argument compelling. Dahlberg brought the computer equipment into this state in order to install software and to test the computer equipment. Such processing clearly falls within the processing exception to the use tax codified at Minn. Stat. § 297A.01, subd.7.

Despite this clear exception to the use tax, the tax court focused on the language concerning tangible personal property *"shipped or brought* into Minnesota for the purpose of subsequently being transported outside Minnesota and thereafter used solely outside Minnesota." Minn.Stat. § 297A.01, subd. 7 (emphasis added). The tax court ruled that Dahlberg must pay a use tax because Hewlett Packard, not Dahlberg, "brought" the computer equipment into Minnesota. Dahlberg counters that the statute contains no requirement that any particular party bring the property into the state, nor that the property be brought into the state by its technical owner at the time it came into the state. Rather, the statute only says "brought into Minnesota"; it does not say "brought into Minnesota by the owner of such property." *See* Minn.Stat. § 297A.01, subd. 7 (1990).[1]

■ Dahlberg's argument is persuasive. The statute does not provide any require-ment that a particular party bring the property into the state. We will not edit the statute to add the requirement that the tangible personal property be "brought into Minnesota by the owner of such property," for that task is properly left to the legislative branch. This court has recently spoken against such judicial tinkering with statutory language in the tax context. *See Homart,* 538 N.W.2d at 911 (refusing to engraft upon a tax statute a requirement that is contrary to the language of the statute and the intention of the legislature); *Green Giant Co. v. Commissioner of Revenue,* 534 N.W.2d 710, 712 (Minn.1995) ("We will not supply that which the legislature purposefully omits or inadvertently overlooks."). Moreover, any doubt or ambiguity in the statutory term "brought" should be resolved in favor of the taxpayer. *See Charles W. Sexton Co. v. Hatfield,* 263 Minn. 187, 195, 116 N.W.2d 574, 580 (1962) ("One well-recognized rule is that where the meaning of a taxing statute is doubtful, the doubt must be resolved in the favor of the taxpayer.").

The crux of the tax court's ruling, however, is that the sales and use tax are complementary. *See Color–Ad Packaging, Inc. v. Commissioner of Revenue,* 428 N.W.2d 806, 806–07 (Minn.1988) (sales and use taxes are mutually exclusive, but complementary, and are "designed to exact an equal tax based on a percentage of the purchase price on the property in question"); *see also Miller v. Commissioner of Revenue,* 359 N.W.2d 620, 621–22 (Minn.1985) (discussing complementary nature of sales and use taxes); *Deluxe Check Printers, Inc. v. Commissioner of Taxation,* ·295 Minn. 76, 79, 203 N.W.2d 341, 343 (1972) (characterizing imposition of use tax as "in lieu" of sales tax). Based on the complementary nature of the sales and use taxes, the tax court ruled that Dahlberg must pay the use tax because Dahlberg acquired the computer equipment in a Minnesota taxable sale but did not pay sales tax.

To be sure, this court has long-recognized that the sales and use taxes are complementary. But this does not mean that each tax

---

1. *Cf.* Minn.Stat. § 297A.25, subd. 5 (1990) (the exemption for outstate transport or delivery), where the legislature has specified that to be exempt the property must be shipped or transported outside of Minnesota "by the purchaser."

serves as a substitute for the other. In this case, Hewlett–Packard is the only party upon whom direct liability for the failure to pay the sales tax falls. Dahlberg cannot be forced to pay a use tax simply because Hewlett Packard failed to pay sales tax. For tax purposes, Dahlberg is not its brother's keeper.

Dahlberg clearly brought the computer equipment into Minnesota to have it processed and then sent to other states for its intended use. We can find no way to creatively explain how Dahlberg "used" the equipment, for it is beyond dispute that Dahlberg merely processed the equipment in this state. Nor can we agree with the tax court that the computer equipment was not "brought into Minnesota," when "brought" is not defined in the statute and ample authority establishes that doubts and ambiguities in the tax statutes are to be resolved in favor of the taxpayer. The tax court's labelling of Dahlberg's processing of the computer equipment as a "use" and its conclusion that the equipment was not "brought into Minnesota" suggests a results-oriented statutory and rule interpretation designed to remedy the Department of Revenue's apparent present inability to collect sales tax from Hewlett Packard. We conclude that the use tax statute cannot be used under these facts to collect from Dahlberg the sales tax that should have been paid by Hewlett–Packard.

Reversed.

COYNE, Justice (dissenting).

I respectfully dissent. It has been my observation that the first use any purchaser knowledgeable about the operation and employment of computers makes of his or her newly acquired computer is the installation of specialized software designed for the purchaser's particular use. On completion of that first use the purchaser's second use is testing to ascertain whether the specialized software has been properly installed and whether the new computer adequately performs the desired function.

If the purchase of the computer was accomplished in Minnesota, the purchaser was obliged to pay a sales tax. If the purchase occurred elsewhere, on the first use of the property in Minnesota the purchaser became obligated to pay a use tax. That Dahlberg Hearing Systems, Inc., turned the computers it purchased from Hewlett Packard over to Dahlberg's franchisees after installing its specialized software and testing the equipment does not, in my opinion, convert Dahlberg's use of the computers into "processing" the equipment and relieve it of the obligation to pay either a sales tax or a use tax. Therefore, it seems to me that Dahlberg, like any other purchaser who installs his or her own specialized software and tests the equipment to ascertain whether it properly performs the desired function, is liable for use tax. Consequently, I would affirm the tax court's denial of Dahlberg's refund claim.