**BCBSM, INC. (d/b/a Blue Cross–Blue Shield of Minnesota), Respondent,**

v.

**COMMISSIONER OF REVENUE, Relator.**

**No. C8–02–1647.**

Supreme Court of Minnesota.

June 12, 2003.

Mike Hatch, Attorney General, Craig R. Anderson, Asst. Attorney General, St. Paul, MN, for Relator.

Walter A. Pickhardt, Lisa R. Pugh, Faegre & Benson LLP, Minneapolis, MN, for Respondent.

## OPINION

MEYER, Justice.

The issue in this case is whether premiums received by an insurer on stop-loss insurance policies issued to employers who self-fund health care coverage for their employees are subject to a premium tax under Minn.Stat. § 60A.15, subd. 1(b) (1996) (current version at Minn.Stat. § 297I.05 (2002)). BCBSM, Inc. (d/b/a Blue Cross–Blue Shield of Minnesota) (hereinafter Blue Cross) appealed to the Minnesota Tax Court from an adverse ruling by the Commissioner of Revenue (hereinafter commissioner). The tax court reversed the commissioner's order, finding that Blue Cross's receipts from this insurance transaction were not subject to a premium tax. We affirm the tax court.

Respondent Blue Cross is a nonprofit health services corporation organized under Minn.Stat. ch. 62C (2002). Between January 1, 1996, and December 31, 1997, Blue Cross sold stop-loss insurance policies to various employers who had self-

funded their employees' health care costs. Under Minn.Stat. § 60A.15, Blue Cross paid an insurance premium tax equal to one percent of all premiums collected on the stop-loss policies. Minn.Stat. § 60A.15, subd. 1(d) (1996). Believing that these payments were made in error, Blue Cross submitted three timely claims for a refund. The commissioner partially allowed the claims and denied the remainder, concluding that the premium tax applied to the stop-loss policies written by Blue Cross.

When an employer provides health insurance to its employees through a self-funded health care plan, the employees' health care costs are paid directly out of the employer's assets and it is the employer who assumes the risk for the employees' health care coverage. Employers with self-funded plans sometimes purchase stop-loss insurance policies. A stop-loss policy covers the employer's risk above a specified amount known as the attachment point. *See* Minn.Stat. § 60A.235, subd. 3 (1996). In this type of insurance contract, the stop-loss insurer generally has no direct relationship with the employee.

Before the tax court, the parties stipulated that the employers in this case agreed to assume the entire risk for the employees' health care costs. According to undisputed testimony, Blue Cross insured the various employers above a certain attachment point and had no direct insuring relationship with the employees. Indeed, the employees may not even have been aware that stop-loss coverage had been purchased by the employer.

The premium tax at issue is levied as a percentage of "gross premiums less return premiums on all *direct business* received by the insurer in this state." Minn.Stat. § 60A.15, subd. 1(b) (emphasis added). The question before us is whether premiums paid for stop-loss coverage by employers who self-fund their employees' health care costs are premiums paid on "direct business."

As the facts are not in dispute, this is a question of statutory interpretation that we review de novo. *See Dahlberg Hearing Sys., Inc. v. Comm'r of Revenue,* 546 N.W.2d 739, 741 (Minn.1996). The first inquiry in statutory interpretation is whether the law is ambiguous. *See* Minn. Stat. § 645.16 (2002). If the words of the statute are clear and unambiguous, "the letter of the law shall not be disregarded under the pretext of pursuing the spirit." *Id.*

"Direct business" is not defined in Minn. Stat. § 60A.15, nor is it defined in Minn. Stat. § 60A.02 (1996), the general definitional section. Blue Cross argues that the term "direct business" contemplates a direct relationship between the insurer and the employee. If there is an intervening party between the insurer and the employee, such as an employer, then the insurer's relationship to the employee is not direct. As Blue Cross's only obligation was to the employers, each of whom had fully assumed the risk of their employees' health care costs, Blue Cross concludes that its stop-loss insurance policies are not direct business and therefore not taxable under the statute.

Blue Cross relies heavily on a tax court decision, *John Alden Life Insurance Co. v. Commissioner of Revenue,* No. 6530, 1995 WL 590319 (Minn. T.C. Oct. 3, 1995). The appellant in *John Alden* was an insurance company that had a reinsurance agreement with health maintenance organizations (HMOs). *Id.* at *1. The HMOs bought stop-loss insurance from John Alden Life Insurance Company, but the HMOs remained solely responsible for the enrollees' health care risk coverage under the group plan. *Id.* The court concluded

that the "direct business" was between the insured enrollee and the HMOs that assumed the enrollee's risk. *Id.* at *2. The relationship between the enrollee and John Alden Life Insurance Company was indirect because of the intervening insurer, the HMO. *Id.* In reaching this conclusion the court defined the term "direct business" under Minn.Stat. § 60A.15 as " 'an insurance contract between the insured and the insurer which has accepted the risk of a designated loss to the insured, which relationship is * * * *uninterrupted by the presence of another insurer.*' " *Id.* (citations omitted). Blue Cross urges the same analysis in the instant case.

In contrast, the commissioner argues that the holding in *John Alden* is limited to HMOs because they are essentially "insurance companies" and self-funded employers are not. The commissioner asserts that "reinsurance is generally viewed to be a paradigmatic example of a type of insurance business that is not direct." Thus, if the policies of insurance between Blue Cross and the self-funded employers are reinsurance policies, they are not direct business and not subject to taxation. The commissioner contends that policies may be considered reinsurance only if both parties to the contract are insurance companies. According to the commissioner, a self-funded employer cannot be an insurance company because the self-funded employer is not "engaged in the business of selling insurance, it does not employ agents, and the State does not license that employer to sell insurance" and does not receive a premium for the health care coverage it provides. The commissioner concludes that since everything that is not reinsurance is direct coverage, and these policies are not reinsurance, the policies are necessarily direct business.

In our view, the plain meaning of the statute is not self-evident. "Direct business" under Minn.Stat. § 60A.15 could be reasonably interpreted to mean either everything except policies sold between insurance companies, or simply those policies where there is a direct relationship between the insurer and the employee. The former interpretation would allow taxation on the premiums for these stop-loss policies, while the latter interpretation would preclude taxation. It is not entirely clear to us that the plain language of the statute evinces an intent to tax a stop-loss policy sold to employers where the insurance company selling the policy has no direct relationship to the ultimate consumer. We, therefore, conclude that the statute is not clear and free from ambiguity.

As the statute's meaning is ambiguous, we may consider the parties' arguments on the legislative intent and consider among other matters: the purpose of the law, the circumstances of its enactment, and the mischief the law was meant to remedy. *See* Minn.Stat. § 645.16. However, in the context of tax levying statutes, there is no presumption of taxation. *See Charles W. Sexton Co. v. Hatfield,* 263 Minn. 187, 195, 116 N.W.2d 574, 580 (1962) (concluding that this court cannot "extend the scope of a tax-levying statute beyond the clear meaning of the language used"). Instead, we construe ambiguous taxation provisions in favor of the taxpayer where the ambiguous term is crucial to the applicability of the tax. *Dahlberg,* 546 N.W.2d at 743; *see also Northland Country Club v. Comm'r of Taxation,* 308 Minn. 265, 267, 241 N.W.2d 806, 807 (1976) (concluding that while the commissioner's interpretation of the statute was rational, the presence of crucial undefined terms will invoke the principle that tax statutes are interpreted in favor of the taxpayer).

This statutory term has been part of Minnesota law since 1907, Act of April 23, 1907, ch. 321, § 1, 1907 Minn. Laws 434,

436 (codified at Rev. L. Minn. Supp.1909 § 1625), and throughout that time neither this court nor the legislature has defined the term "direct business." The commissioner contends that the purpose of imposing a tax on "direct business" is to ensure that the premiums paid by the party ultimately insured are taxed on at least one level of premium. If the premium paid to the primary insurer is taxed, then the premium paid for reinsurance or stop-loss coverage is excluded, because to do otherwise would result in double taxation. Essentially, the commissioner asserts that when an employer self-insures and taxation is not available at the primary level, the premium paid to the secondary insurer must be taxed to satisfy the legislature's intent to impose tax on at least one level of premium. The commissioner cites no legislative history in support of this proposition. Although the commissioner's statement of statutory purpose is plausible, in the absence of legislative history or a more clear statement of purpose from the legislature, we will not read into Minn.Stat. § 60A.15 an intent to tax in this instance. *See, e.g., Dahlberg,* 546 N.W.2d at 743.

In sum, the meaning of "direct business" under Minn.Stat. § 60A.15 is ambiguous. Because we construe ambiguous taxation provisions in favor of the taxpayer, we conclude that Minn.Stat. § 60A.15, the premium taxation statute, cannot be used in this case to tax the stop-loss premiums collected by Blue Cross. Therefore, we affirm the tax court's decision and approve Blue Cross's claims for a refund.

Affirmed.