JME OF MONTICELLO, INC., Relator,

v.

COMMISSIONER OF REVENUE,
Respondent.

No. A13–1968.

Supreme Court of Minnesota.

June 25, 2014.

Jack Y. Perry, Diane Bratvold, Jason R. Asmus, Briggs and Morgan, P.A., Minneapolis, MN, for relator.

Lori Swanson, Attorney General, Kathryn Woodruff, Tamar N. Gronvall, Assistant Attorneys General, Saint Paul, MN, for respondent.

## OPINION

DIETZEN, Justice.

Relator JME of Monticello (JME), a waste management service provider, was audited by respondent Commissioner of Revenue, and thereafter was assessed approximately $87,000 in additional solid waste management taxes and interest. The Commissioner concluded that JME improperly calculated its waste management tax based on JME's faulty interpretation of Minn.Stat. § 297H.04 (2012). JME appealed the Commissioner's tax order and brought a motion for summary judgment, arguing that it had correctly interpreted the statute and had correctly calculated the tax. The tax court agreed with the Commissioner's interpretation of the statute and upheld the Commissioner's order. This certiorari appeal followed. We affirm.

Minnesota imposes a tax on the management of waste, specifically mixed or nonmixed municipal solid waste. Minn.Stat. ch. 297H (2012). JME provides waste management services consisting of "waste collection, transportation, processing, and disposal" for generators of nonmixed municipal solid waste, such as construction and demolition debris. Minn.Stat. § 297H.01, subds. 6, 12. JME is required by chapter 297H to collect a waste management tax from the commercial generators to whom it provides services, and then pay the collected tax to the Commissioner. Minn.Stat. §§ 297H.04, .11. The dispute in this case concerns how a waste management service provider such as JME should determine the volume of waste when it calculates the tax.

Pursuant to Minn.Stat. § 297H.04, subds. 1, 2(a), the tax for nonmixed municipal solid waste is calculated on the volume of waste collected. Specifically, the tax is "60 cents per noncompacted cubic yard of periodic waste collection capacity purchased by the generator." Minn.Stat. § 297H.04, subd. 2(a). The volume of waste collected is measured by "the size of the container for the nonmixed municipal solid waste, the actual volume, or [a] weight-to-volume conversion."[1] *Id.* Although the statute provides three options for calculating the tax, the provider must use "the same method for calculating the waste management service fee so that both [the tax and the fee] are calculated according to container capacity, actual volume, or weight." *Id.*

In August 2012, the Commissioner notified JME that the Department intended to audit JME's waste management tax returns for the period of January 2009 through July 2012. During the audit, the Commissioner concluded that JME was incorrectly computing the waste manage-

---

1. In contrast, the tax on mixed municipal solid waste, such as "garbage, refuse, and other solid waste from residential, commercial, industrial, and community activities that [is] aggregate[d] for collection" is imposed on the sales price of the waste management services provided to the residential or commercial generator. *See* Minn.Stat. §§ 115A.03, subd. 21 (2012) (defining "mixed municipal solid waste"), 297H.01, subd. 5 (incorporating the definition from section 115A.03), 297H.02, subd. 1 (imposing the tax on the sales price charged to a "residential generator" of mixed municipal solid waste), 297H.03, subd. 1 (imposing the tax on the sales prices charged to a commercial generator of mixed municipal solid waste).

ment tax under section 297H.04 because it did not use the "same method" for calculating the tax as it used to calculate its fees. Specifically, JME had calculated the fee for its collection services based on the disposal container size, but then calculated the tax based on the weight of waste collected.[2] The weight method is used by local governments to calculate the fees imposed on the waste disposal facilities[3] JME uses to dispose of its municipal solid waste. Based upon his interpretation of the statute, the Commissioner assessed JME with unpaid taxes and interest of $86,962.96.

JME appealed to the tax court and filed a motion for summary judgment arguing that its proposed interpretation of Minn. Stat. § 297H.04, subd. 2(a), was correct. The Commissioner filed a cross-motion for summary judgment. The tax court agreed with the Commissioner's interpretation, concluding that Minn.Stat. § 297H.04, subd. 2(a), requires that the tax be calculated using the same method that the waste management service provider uses to calculate the fees it imposes on commercial generators. In doing so, the court rejected JME's argument that the local government fee should be used to calculate the tax; consequently, the tax court upheld the Commissioner's order and entered judgment in the Commissioner's favor.[4]

JME submitted several documents to the tax court that described various transactions related to its collection of nonmixed municipal solid waste from commercial

generators and disposal of that waste. In a typical transaction, JME collects construction debris from a commercial generator, such as the operator of a construction site, and then JME charges the commercial generator a fee for that service, based on the volume of waste collected, as measured by the container size. The commercial generator pays JME the waste management tax imposed by Minn.Stat. § 297H.04. *See* Minn.Stat. § 297H.11, subd. 1 (requiring the waste management service provider to "separately and accurately state the amount of the tax" in its "statement of charges for waste management services"). Once the waste is collected from the commercial generator, JME takes the waste, i.e., construction debris, to a disposal facility, which charges JME a fee for disposing of the waste, which may include charges imposed by a political subdivision, such as a municipality, under Minn.Stat. §§ 115A.919, .921 (2012). These local government fees are imposed "on operators of facilities for the disposal" of waste, by "cubic yard of waste or [by weight]." Minn.Stat. §§ 115A.918, subd. 2a (2012), .919, subd. 1(a), .921, subd. 1. At least two of the waste disposal facilities JME uses calculate the fee based on weight.

## I.

On appeal, JME argues that the tax court erred in concluding that under Minn. Stat. § 294H.04, subd 2(a), when the waste management service provider calculates the fee it charges commercial generators

---

2. The Commissioner's tax order described this calculation differential as "billing by the box taxing by the ton."

3. A waste "disposal facility" is a "waste facility ... designed or operated for the purpose of disposing of waste on or in the land." Minn. Stat. § 115A.03, subd. 10 (2012).

4. Initially, the tax court granted summary judgment in favor of the Commissioner as to the methodology for calculating the tax, but not as to the amount because it did not have sufficient evidence to make that determination. The parties subsequently stipulated that if the Commissioner's interpretation of the statute was correct, the Commissioner properly calculated JME's tax liability.

based on the size of the container the provider must also use container size to calculate the solid waste management tax. According to JME, the calculation of the waste management tax should be based upon the weight of the solid waste. JME reaches this conclusion because the disposal facilities JME uses are subject to municipal fees based on the weight of waste they collect.

■■■ We review decisions from the Minnesota Tax Court to determine whether: (1) the tax court had jurisdiction, (2) the tax court decision was supported by the evidence and was in conformity with the law, and (3) the tax court committed any other error of law. *McLane Minn., Inc. v. Comm'r of Revenue,* 773 N.W.2d 289, 292–93 (Minn.2009); *see also* Minn. Stat. § 271.10, subd. 1 (2012). When, as here, the material facts and tax court's jurisdiction are not in dispute, we need only consider whether the tax court properly applied the law. *McLane Minn., Inc.,* 773 N.W.2d at 293.

■■■ Statutory interpretation is a question of law that we review de novo. *In re Welfare of J.J.P.,* 831 N.W.2d 260, 264 (Minn.2013). The goal of all statutory interpretation is to ascertain and effectuate the intent of the Legislature. Minn. Stat. § 645.16 (2012). When interpreting a statute, we give words and phrases their plain and ordinary meaning. *Staab v. Diocese of St. Cloud,* 813 N.W.2d 68, 72 (Minn. 2012). Further, we read the statute as a whole and give effect to all of its provisions. *Id.*

■■ To determine how the solid waste management tax should be calculated, we turn to the text of the statute. Minnesota Statutes § 297H.04, subd. 2(a), provides:

Commercial generators that generate nonmixed municipal solid waste shall pay a solid waste management tax of 60 cents per noncompacted cubic yard of periodic waste collection capacity purchased by the generator, based on the size of the container for the nonmixed municipal solid waste, the actual volume, or the weight-to-volume conversion schedule in paragraph (c). However, the tax must be calculated by the waste management service provider using the same method for calculating the waste management service fee so that both are calculated according to container capacity, actual volume, or weight.

Minn.Stat. § 297H.04, subd. 2(a).

It is helpful to review the step-by-step application of subdivision 2(a). The first sentence provides that a commercial generator of waste is obligated to pay a waste management tax of 60 cents per cubic yard of waste collection capacity purchased by the generator from the waste management service provider (in this case JME). *Id.* A "commercial generator" is the "owner or operator of a business ... that generates ... nonmixed municipal solid waste" or "any other generator of taxable waste that is not a residential generator" or "a self-hauler." Minn.Stat. § 297H.01, subd. 2. The second sentence of Minn.Stat. § 297H.04, subd. 2(a), places the burden on the waste management service provider to calculate the tax. It is undisputed that JME is a waste management service provider. The waste management tax is calculated by multiplying 60 cents by the number of cubic yards of waste collection capacity purchased by the commercial generator from the waste management service provider. *Id.* The statute explicitly states how the number of cubic yards of capacity is calculated. *See id.* Specifically, the waste management service provider may use the size of the container, the actual volume, or the weight-to-volume conversion schedule in paragraph (c). *Id.* But the statute goes on to state that the meth-

od used to calculate the number of cubic yards in determining the waste management tax must be the same method used to calculate the number of cubic yards to determine the waste management service fee. *Id.*

The primary disagreement between the parties is over the meaning of the "waste management service fee" in Minn.Stat. § 297H.04, subd. 2(a). JME argues that "waste management service fee" is not defined in Minn.Stat. ch. 297H, and therefore the court should look at the definitions in Minn.Stat. ch. 115A (2012) to ascertain its meaning. *See* Minn.Stat. § 297H.01, subd. 1 ("For terms not defined in this section, the definitions contained in chapter 115A are incorporated into this chapter."). JME relies on the definition of "waste management fee" in Minn.Stat. ch. 115A, which includes "all charges imposed by [a] political subdivision for waste collection and management services" to support its proposed interpretation of "waste management service fee." *See* Minn.Stat. § 115A.929(3). The Commissioner argues, and the tax court concluded, that the phrase "waste management service fee" in section 297H.04, subdivision 2(a), means the fee a waste management service provider charges commercial generators for waste management services.

It is true that section 297H.01 does not define the phrase "waste management service fee," but the statute does define other relevant terms. The term "waste management services" means "waste collection, transportation, processing, and disposal." Minn.Stat. § 297H.01, subd. 12. Further, a "waste management service provider" is the entity that "directly bills the generator or self-hauler for waste management services." *Id.*, subd. 11.

JME is correct that for terms not defined in section 297H.01, the statute incorporates definitions found in Minn.Stat. ch. 115A. Although chapter 115A defines "waste management fees," chapter 115A does not define "waste management service fee." *See* Minn.Stat. § 115A.929. The term "waste management service fee" is materially different than the term "waste management fee." JME does not point to any language in chapter 115A to suggest that the terms are equivalent. Indeed, JME provides no persuasive reason to rely upon chapter 115A to construe an undefined term in chapter 297H when chapter 115A likewise does not define the term. Therefore, we must rely upon the plain language of section 297H.04 to determine its meaning.

We conclude that the term "waste management service fee" in Minn.Stat. § 297H.04, subd. 2(a), means the fee that a waste management service provider charges a commercial generator for waste management services. Three reasons support our conclusion. First, the plain text of subdivision 2(a) focuses on the transaction between the commercial generator and the waste management service provider. Specifically, the focus of subdivision 2(a) is the commercial generator, which must pay a tax of 60 cents per cubic yard of waste collection capacity it purchases. And the commercial generator purchases waste collection capacity from the waste management service provider, which collects, transports, and disposes of the waste. It logically follows that the service provider uses "the same method" for calculating the tax and the waste management service fee, so that "both are calculated" on the same basis. The Legislature plainly sought consistency in the transaction between the commercial generator and the waste management service provider.

Significantly, there is no language in subdivision 2(a) that refers to a transaction between the waste management service provider and the waste disposal facility

regarding the disposal fee imposed by the municipality. Because subdivision 2(a) focuses on the transaction between the waste management service provider and the commercial generator, it logically follows that both the fee for the provider's services, and the tax on those services, should be calculated using the same method.

Second, the operative phrase in subdivision 2(a) is "waste management service fee." A "fee" is "a sum paid or charged for a service." *Merriam–Webster's Collegiate Dictionary* 426 (10th ed.2001). The most natural reading of "fee" in the statute is the fee a waste management service provider charges the commercial generator for its services. To interpret "waste management service fee" to refer to the fee a municipality charges a waste disposal facility is strained and unreasonable.

Third, our interpretation of subdivision 2(a) is consistent with parallel provisions in chapter 297H, *see Schmidt ex rel. P.M.S. v. Coons*, 818 N.W.2d 523, 527 (Minn.2012); *Am. Family Ins. Grp. v. Schroedl*, 616 N.W.2d 273, 277 (Minn.2000) (noting that the court reviews relevant language in related provisions to ascertain the plain meaning of a statute). Specifically, sections 297H.05 and 297H.115 impose a tax on waste management services, directly or as a use tax, on self-haulers[5] and other waste generators. *See* Minn.Stat. §§ 297H.05, .115, subd. 1. Section 297H.05 provides in part:

> (b) A self-hauler of nonmixed municipal solid waste shall pay [a] tax to the operator of the waste management facility to which the waste is delivered at the rate imposed under section 297H.04.

> (c) The tax imposed on the self-hauler of nonmixed municipal solid waste may be based either on the capacity of the container, the actual volume, or the weight-to-volume conversion schedule in paragraph (d). However, the tax must be calculated by the operator using the same method for calculating the tipping fee so that both are calculated according to container capacity, actual volume, or weight.

Minn.Stat. § 297H.05(b)–(c). The parties agree that a "tipping fee" is a fee charged by a disposal facility for accepting waste. Thus, the tax imposed on self-haulers for delivering waste to a waste management facility must be calculated using the same volume-based method that the waste management facility uses to calculate the fees it charges for accepting the waste. *Id.* As with section 297H.04, the plain language of section 297H.05 demonstrates that the consistency sought is within the framework of a single transaction, here between the facility operator and the self-hauler.

Similarly, Minn.Stat. § 297H.115, subd. 1(c), allows the Commissioner to collect the tax directly from the commercial generator if the waste management service provider does not pay the tax. *See id.* Section 297H.115 instructs commercial generators to calculate the use tax using the same method as is used in section 297H.04. Under JME's interpretation, the commercial generator would have to know the volume-based method that local governments use to impose fees on disposal facilities in the area where the waste is disposed. But the commercial generator may not know where the waste was taken, let alone the method used to impose disposal fees in that area. JME's proposed interpretation,

**5.** A "self-hauler" is "a person who transports mixed municipal solid waste or nonmixed municipal solid waste generated by that person or another person without compensa- tion." Minn.Stat. § 297H .01, subd. 10. For example, a construction company that trans- ports its own waste directly to a disposal facility is a self-hauler. *See id.*

therefore, is unworkable when applied to Minn.Stat. § 297H.115, subd. 1(c). Under the plain language analysis that we use, the generator would simply review the invoices it received from the waste management service provider and calculate the tax using the same volume-based method used to calculate the waste management service provider's fee. Unlike JME's interpretation, our interpretation focuses on a single transaction, is consistent with Minn.Stat. § 297H.05, and is workable under Minn. Stat. § 297H.115, subd. 1(c).

## II.

JME raises three alternative arguments to support its proposed interpretation of section 297H.04 as requiring a tax calculation based upon a local government's fee. None of these arguments have merit, and we reject them.

First, JME argues that the reference to "fees" in Minn.Stat. § 297H.06 supports an interpretation of "waste management service fee" as the local government's fee under Minn.Stat. ch. 115A. Section 297H.06 is entitled "Exemptions" and provides:

> The amount of a surcharge, *fee,* or charge established pursuant to section 115A.919, 115A.921, 115A.923, 400.08, 473.811, or 473.843, or a service charge by a home rule charter or statutory city that owns and operates a solid waste-to-energy resource recovery facility, is exempt from the solid waste management tax.

Minn.Stat. § 297H.06, subd. 1 (emphasis added). JME relies on this reference to "fee," together with the definition of "waste management services" in section 297H.01, subdivision 12, to argue that "waste management service fee" means the fees that political subdivisions impose for waste management services under Minn.Stat. §§ 115A.919, 115A.921,

115A.923, 400.08, 473.811, or 473.843 (2012).

JME's reliance on section 297H.06 is misplaced. Minnesota Statutes § 297H.06 does not define "fee," it simply uses that word to identify costs ("surcharge, fee, or charge") that are exempt from the tax. Read in the context of their respective sections, "fee" in "waste management service fee" logically and plainly refers to the fee charged by the "waste management service provider," while "fee" for purposes of the section on exemptions logically and plainly refers to the fees cited in that section. Essentially, JME's argument asks the court to carve the word "fee" from the phrase "waste management service fee," derive a meaning for the now-isolated word "fee" based on language that no longer applies, and then attach this new meaning to the phrase as it appears in section 297H.04. JME's proposed interpretation ignores the plain language in favor of a cumbersome, piecemeal construction. *See McLane Minn., Inc. v. Comm'r of Revenue,* 773 N.W.2d 289, 297 (Minn.2009) (rejecting an "incomplete" statutory interpretation that "views the statute piecemeal"). Consequently, we reject it.

Second, JME argues that the tax court's interpretation effectively equates "waste management service fee" with "sales price," which is the tax base used for mixed municipal solid waste. *See* Minn. Stat. §§ 297H.02–.03. "Sales price" is broadly defined as the *"total consideration* valued in money for waste management services, excluding separately stated charges for exemptions listed under section 297H.06." Minn.Stat. § 297H.01, subd. 9 (emphasis added). Under our interpretation, the waste management service fee is simply the portion of the sales price calculated by determining the number of cubic yards of waste collection capacity purchased by the generator. The sales price, by contrast, may also include other charges, like a flat-rate fuel surcharge.

Because this fuel surcharge is not affected by the volume of waste collection capacity purchased, it is not a part of the waste management service fee. But the fuel surcharge would be a part of the sales price because it is a part of the "total consideration" for the waste management services. Therefore, "sales price" and "waste management service fee" do not have the same meaning in chapter 297H.

Third, JME argues that the tax court's interpretation renders other portions of section 297H.04 superfluous. According to JME, because the first sentence of subdivision 2(a) directs commercial generators to pay the tax "based on the size of the container for the nonmixed municipal solid waste, the actual volume, or the weight-to-volume conversion schedule," construing the next sentence to require waste management service providers to calculate this tax using the same method renders the second sentence superfluous. Alternatively, JME alleges that because the first sentence of subdivision 2(a) gives waste management service providers discretion over how to calculate the tax, construing the second sentence to require waste management service providers to calculate the tax based on how they charge commercial generators eliminates this discretion. These arguments are unavailing.

The first sentence of subdivision 2(a) instructs waste management service pro-viders to calculate the waste management tax based on one of three volume-based methods. Minn.Stat. § 297H.04, subd. 2(a). The second sentence restricts providers to using the same method they use to calculate cubic yards when calculating their fees, and therefore is not superfluous. *Id.* For the same reason, JME's argument that waste management service providers have discretion over how they calculate the tax fails. Once a waste management service provider determines how it will calculate its fees, the waste management service provider must calculate the tax using the same method it uses to calculate its fees. *See* Minn.Stat. § 297H.04, subd. 2(a).[6]

## III.

We conclude that under Minn.Stat. § 297H.04, subd. 2(a), the term "waste management service fee" means the fee waste management service providers charge commercial generators for waste management services. Accordingly, we affirm the tax court's order granting the Commissioner's motion for summary judgment.[7]

Affirmed.

**6.** JME argues that a Department of Revenue Fact Sheet adopts its interpretation of the disputed term. We need not consider this argument because "waste management service fee" is only susceptible to one interpretation and Minn.Stat. § 270C.08 (2012) provides that "tax information bulletins," such as a fact sheet, cannot supersede, alter, or otherwise change any provision of Minnesota's revenue laws.

JME also argues that if the statute is ambiguous, the ambiguity must be resolved in favor of the taxpayer. *See BCBSM, Inc. v. Comm'r of Revenue,* 663 N.W.2d 531, 533 (Minn.2003)

("[W]e construe ambiguous taxation provisions in favor of the taxpayer where the ambiguous term is crucial to the applicability of the tax."). Because we conclude that the statute is not ambiguous, we do not address this argument. *See Winnetka Partners Ltd. P'ship v. Cnty. of Hennepin,* 538 N.W.2d 912, 914 (Minn.1995) (declining to apply the rule of strict construction in favor of the taxpayer because the statute's meaning was unambiguous).

**7.** We acknowledge that JME argues that the waste management tax under section 297H.04 may be calculated based on fees

---

collected under Minn.Stat. §§ 400.08, 473.811, and 473.843 (2012). Because the parties' arguments focused on the fees imposed under sections 115A.119 and .921, our analysis also focuses on those sections. But our reasoning and conclusion would be the same under either set of statutes.